TIMOTHY C. FOX
Montana Attorney General
MATTHEW T. COCHENOUR
J. STUART SEGREST
Assistant Attorneys General
215 North Sanders
P.O. Box 201401
Helena, MT 59620-1401
Phone:  406-444-2026
Fax:  406-444-3549
mcochenour2@mt.gov
ssegrest@mt.gov

COUNSEL FOR DEFENDANTS

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| ROBERT MYERS,<br><br>   Plaintiff,<br><br> v.<br><br>WILLIAM E. FULBRIGHT, in his official capacity as the County Attorney for Ravalli County; TIMOTHY C. FOX, in his official capacity as Attorney General for the State of Montana,<br><br>   Defendants. | Cause No. CV 17–59–M–DWM–JCL<br><br>**DEFENDANTS' BRIEF IN SUPPORT OF MOTION TO DISMISS** |

# INTRODUCTION

Robert Myers has sued Ravalli County Attorney William Fulbright

and Montana Attorney General Tim Fox, in their official capacities

(collectively, the State), challenging the constitutionality of Mont. Code Ann. § 45-8-212, Montana's criminal defamation statute. Doc. 1. But Myers has been charged with no criminal offense and may never be. He nonetheless asks this Court to intervene in a state criminal investigation and declare unconstitutional Mont. Code Ann. § 45-8-212, the law prohibiting criminal defamation. Doc. 1 at 13. Myers hopes to stop a criminal investigation that the Missoula County Sheriff's Office is conducting by challenging the law in federal court before any potential state charges could be filed. *See* Doc. 9 at 20 (asking this Court to strike the statute to deprive the State of the basis for the investigation). Myers has not named the Sheriff's Office as a defendant.

Myers's legal argument is that the criminal defamation statute does not require proof of actual malice—that is, knowledge that a statement was false or was made with reckless disregard to its truth or falsity—for defamation of a public official. His alleged injury, however, focuses solely on the Sheriff's Office's investigation and the supposed harms it is causing him.

Myers has no standing to challenge Montana's criminal defamation statute. Myers has not been charged with any offense. At

most, there is a nascent criminal investigation, which is an insufficient ground to challenge a criminal statute. Further, any potential criminal charges would be dependent on whatever the Sheriff's Office's investigation uncovers and, even then, on prosecutorial discretion. Thus, Myers's claims rest on speculation and multiple contingencies that may never occur. He has failed to bring a ripe case and he lacks standing. Accordingly, this Court should dismiss Myers's lawsuit.[1]

## FACTS AND BACKGROUND

In 2016, Robert Myers ran for the elected position of state district court judge in Ravalli County, Montana. Doc. 1 at 4-5. He ran against Judge Jeffrey Langton. Myers lost. During his campaign, Myers ran ads that accused Judge Langton of, among other things, committing fraud, abusing his power, and buying illegal drugs from a minor. *See* Doc. 1 at 2; Doc. 1-5; Doc. 1-9; *Myers v. Thompson*, 192 F. Supp. 3d 1129, 1134 (D. Mont. 2016). Based on Myers's advertisements, the

---

[1] Myers has also moved for a preliminary injunction (Docs. 8-9), which the State opposes. Both this brief and the State's brief opposing a preliminary injunction discuss standing and ripeness with significant overlap. The State has filed separate briefs for the convenience of the Court and the parties because the motions are distinct and have different briefing schedules. *See* L.R. 7.1(d)(1).

Montana Office of Disciplinary Counsel filed two professional misconduct complaints. *See* Docs. 1-5, 1-9.

According to Myers's complaint, a Missoula County Sheriff's detective phoned Myers about a criminal defamation investigation related to Myers's 2016 campaign advertisements. Doc. 1 at 11. Myers alleges that the criminal investigation may prevent him from preparing his defense in his professional misconduct cases, may inhibit him from speaking out against Judge Langton, and may "chill" witnesses in his misconduct cases. *See* Doc. 1 at 12-13.

## ARGUMENT

I. **This Court should dismiss Myers's complaint for lack of subject matter jurisdiction because he has failed to satisfy the minimum requirements of standing and ripeness.**

Article III of the United States Constitution limits federal court jurisdiction to only *actual* cases and controversies. U.S. Const. art. III, § 2; *Allen v. Wright*, 468 U.S. 737, 750 (1984). The party asserting federal subject matter jurisdiction must prove its existence. *Chandler v. State Farm Mut. Auto. Ins.*, 598 F.3d 1115, 1122 (9th Cir. 2010). This includes establishing standing to bring claims and establishing that claims themselves are ripe for adjudication.

*Chandler*, 598 F.3d at 1121. Challenges to standing and ripeness are properly raised in a motion to dismiss under Fed. R. Civ. P. 12(b)(1), because both "standing and ripeness pertain to federal courts' subject matter jurisdiction . . . ." *Chandler*, 598 F.3d at 1122. Additionally, if a court "determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3).

This Court should dismiss this action because Myers has suffered no "injury in fact" and because even his speculative injuries are not tied to Defendants' conduct. Thus, Myers lacks standing to bring this matter into federal court. Additionally, because Myers presents only speculative injuries, his claims are not ripe. Under either ground, this Court lacks subject matter jurisdiction and should dismiss this case.

### A. Myers lacks standing.

To establish standing, Myers must satisfy three elements: (1) that he suffered an injury in fact; (2) that the defendants' challenged conduct caused the injury; and (3) that a court decision could redress the injury. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). Myers has failed to meet his burden.

To show an "injury in fact," Myers must show an "invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Chandler*, 598 F.3d at 1122 (quoting *Lujan* 504 U.S. at 560). Neither the "mere existence of a proscriptive statute nor a generalized threat of prosecution satisfies the 'case or controversy' requirement." *Thomas v. Anchorage Equal Rights Commn.*, 220 F.3d 1134, 1139 (9th Cir. 2000). Instead, there must be a "genuine threat of *imminent* prosecution." *Id.* (citation omitted) (emphasis added).

Myers asserts that he is injured because he believes the "government's 'investigation'" and "impending filing of criminal charges" may prevent him from "preparing his defense" by chilling the witnesses in his professional misconduct cases and because he believes he will likely be charged with criminal defamation. *See* Doc. 1 at 3, 12-13. Myers has failed to prove standing related to these theoretical injuries.

First, Myers ties his claim of injury to an investigation, but the existence of an investigation is not, in and of itself, a constitutional injury. *See Laird v. Tatum*, 408 U.S. 1, 10 (1972) (no federal jurisdiction where a complainant "alleges that the exercise of his

First Amendment rights is being chilled by the mere existence, without more, of a governmental investigative and data-gathering activity" that is allegedly broader than necessary); *also Ohio Civil Rights Commn. v. Dayton Christian Schools*, 477 U.S. 619, 628 (1986) (the Ohio Civil Rights "Commission violates no constitutional rights by merely investigating the circumstances of [an employee's] discharge in this case, if only to ascertain whether the ascribed religious-based reason was in fact the reason for the discharge."). A criminal investigation does not amount to an injury in fact.

Second, Myers's claim that criminal charges loom in his future is entirely speculative. For Myers to have standing, he must show a "*genuine* threat of *imminent* prosecution"; a "possibility of criminal sanctions" is not enough. *San Diego County Gun Rights Comm. v. Reno*, 98 F.3d 1121, 1126 (9th Cir. 1996) (emphasis in original and citation omitted). Myers has demonstrated no imminent prosecution. According to Myers, a detective phoned him about an investigation into Myers's 2016 campaign advertisements and told him that, once the investigation was completed, a report would be forwarded to the Ravalli County Attorney's Office. *See* Doc. 1, ¶ 60-63. Whether—at some

future point in time—any charges may be forthcoming is obviously contingent on what the investigation reveals, what information the report contains, and, finally, prosecutorial discretion. There is no "impending" prosecution, or anything close.

Myers's speculation that the investigation may "chill" some non-party "witnesses" and that they may "clam up" or "become hesitant . . . about testifying" (Doc. 1 at 3, Pl.'s Br. at 20) is not a direct harm to Myers, and it is not even supported by an affidavit from any witnesses. Given that Myers cannot manufacture standing for himself by alleging a generic, subjective "chill" on his own speech, he certainly cannot manufacture standing based on a vaguely-articulated hunch that others might be tentative to support him in his professional misconduct cases. *See Lopez v. Candaele*, 630 F.3d 775, 787 (9th Cir. 2010) (quoting *Laird*, 408 U.S. at 13-14) ("'allegations of a subjective "chill" are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm.'") In sum, Myers has shown no concrete, actual injury, but has instead pled only speculative injuries, which are insufficient to establish standing. *Lopez*, 630 F.3d at 786.

Nor can Myers rely on the "overbreadth" doctrine for standing purposes because that doctrine does not apply in this case. In the First Amendment context, the overbreadth doctrine allows a plaintiff to challenge a law that would be constitutional as applied, but that may be unconstitutional as applied to others not before the court. *See Get Outdoors II, LLC v. City of San Diego*, 506 F.3d 886 (9th Cir. 2007). Even in overbreadth cases, however, courts "ask whether the plaintiff has suffered an injury in fact and can satisfactorily frame the issues on behalf of these non-parties." *Id.* at 891.

The Ninth Circuit reasoned that, without this "bare minimum of standing, the overbreadth exception would nullify the notion of standing generally in First Amendment litigation." *Id.* Thus, even in overbreadth cases, a plaintiff "has standing to challenge only those provisions that applied to it." *Id.* at 892. A plaintiff must still satisfy the *Lujan* factors. *Id.* As discussed, Myers has not met his burden of showing an "injury in fact," and thus, he has no standing to challenge Mont. Code Ann. § 45-8-212.

Moreover, even if Myers were able to claim an injury based on an investigation, he has no standing because he has failed to prove that the

defendants' challenged conduct caused the injury and that a court decision could redress the injury. *Lujan*, 504 U.S. at 560-61. Myers fails to explain what the Ravalli County Attorney or the Attorney General have done that could cause him injury. Neither of the named defendants, or their offices, are conducting the alleged investigation. According to Myers's complaint, whatever investigation is ongoing is being handled by the Missoula County Sheriff's department. *See* Doc. 1 at 10-12. Besides being speculative, Myers's purported harm is not caused by the Ravalli County Attorney's or Attorney General's actions. Thus, Myers fails to meet this element of standing.

Additionally, a court decision striking down the criminal defamation statute would not necessarily redress Myers's claimed injuries. Myers assumes he could be charged with violating the criminal defamation statute, but at this early stage, that is impossible to say. It is possible that the investigation could lead in some other direction. The investigation may uncover no evidence of wrongdoing or it may uncover evidence of a different criminal offense. Even if this Court were to strike the criminal defamation statute, it does not follow that the criminal investigation would automatically terminate. Thus, a court decision may

not redress Myers's alleged injuries. It is too soon to tell—which is another way of saying this is not a justiciable case.

### B. Myers does not have standing as a pre-enforcement plaintiff.

Myers cannot claim standing as a pre-enforcement plaintiff because this is not a self-censorship case involving future speech. In the First Amendment context, there are "relaxed" standing requirements for "pre-enforcement challenges," and a party may establish an injury by showing that a statute poses a realistic danger of direct injury. *Lopez v. Candaele*, 630 F.3d 775, 785 (9th Cir. 2010). In such cases, the United States Supreme Court "'has endorsed what might be called a 'hold your tongue and challenge now' approach rather than requiring litigants to speak first and take their chances with the consequences.'" *Id.* at 785 (citations omitted). In pre-enforcement cases, "self-censorship" can constitute a sufficient injury for standing purposes. *California Pro-Life Council v. Getman* (*CPLC*), 328 F.3d 1088, 1095 (9th Cir. 2003).

Myers cannot claim standing as a pre-enforcement plaintiff. Myers's complaint establishes that the Sheriff's Office's investigation concerns Myers's *past statements* from his 2016 run for district court

judge. *See* Doc. 1, ¶ 60.[2] And, far from holding his tongue, Myers has expressed his views about a state court judge through political advertisements, news outlets, and even this federal lawsuit. *See e.g.*, Docs. 1, 1-3, 1-6, 1-7. This is not a case involving self-censorship, and thus, no relaxed justiciability rules apply. *Lopez*, 630 F.3d at 785.

Perhaps in an effort to manufacture pre-enforcement standing, Myers alleges that the "government's 'investigation'" is "also inhibiting Myers from continuing to speak out about Judge Langton's misconduct." Doc. 1, ¶¶ 64-65. As just discussed, though, the opposite appears to be true. Rather than being inhibited, Myers has used this lawsuit as another platform to express his opinions. More importantly, Myers offers nothing but a conclusory statement about any future speech. But

---

[2] Thus, this case is distinguishable from *Myers v. Thompson*, in which Judge Molloy denied the ODC's motion to dismiss for lack of standing. There, in denying the motion, the court emphasized that Myers wanted to engage in future conduct, and it distinguished that factual circumstance from *Winter v. Wolnitzek*, 186 F. Supp. 3d 673 (E.D. Ky. 2016), stating: "In *Winter*, the plaintiff had already run the relevant advertisements and the election was over by the time she received notice of the complaint. . . . At that point, the only remaining dispute between the parties was a post hoc ruling on the propriety of her earlier actions." *Myers*, 192 F. Supp. 3d at 1137. This case is analogous to *Winter* in that Myers already ran the advertisements in 2016 and that is the conduct that the detective is investigating.

allegations of a subjective chill are insufficient; rather, a plaintiff must provide details about future speech like "when, to whom, where, or under what circumstances" the speech will occur. *Lopez*, 630 F.3d at 787 (quoting *Thomas*, 220 F.3d at 1139). Myers has provided no details, and his "'some day' intentions" fall short of the imminent injury that the Constitution requires for standing. *Lujan*, 504 U.S. at 564; *Lopez*, 630 F.3d at 787-88 (citation omitted).

Further, the reason that pre-enforcement plaintiffs have standing is because their *intended* speech would be *prohibited*. For example, in *Libertarian Party of Los Angeles County v. Bowen*, 709 F.3d 867, 869-70 (9th Cir. 2013), the plaintiffs refrained from engaging in their intended conduct because it was prohibited by the California Elections Code and they feared enforcement. *See also Human Life of Washington v. Brumsickle*, 624 F.3d 990, 1001 (9th Cir. 2010) (group refrained from implementing a program based on reasonable fear that it would require compliance with Washington law); *CPLC*, 328 F.3d at 1094-95 (group refrained from engaging in political speech because it reasonably feared its speech would trigger state enforcement proceedings). By contrast, in *Lopez*, a student who challenged a college sexual harassment policy

could not show an injury-in-fact because he failed to show how the policy would apply to his intended speech.  *Lopez*, 630 F.3d at 792.

Even if Myers were able to convince this Court that this suit concerns future speech, he has not shown how it would be prohibited or how he has expressed an intent to violate state law.  Myers has sworn under oath that his allegations against the state district court judge are true.  *See* Doc. 1, ¶ 40.  If so, then Myers's speech is not prohibited by the criminal defamation statute.  *See* Mont. Code Ann. § 45-8-212(3)(a) (defamation justified if "the defamatory matter is true"); *State v. Helfrich*, 922 P.2d 1159, 1162 (Mont. 1996) ("as a matter of state constitutional law, truth alone is sufficient as a defense—an absolute defense.")  Thus, like the student in *Lopez*, Myers has failed to show how the law would apply to him, and he has no standing as a pre-enforcement plaintiff.

### C. Myers's claims are not ripe.

Closely related to standing is the doctrine of ripeness, which requires courts to "dispose of matters that are premature for review because the plaintiff's purported injury is too speculative and may never occur[.]"  *Chandler*, 598 F.3d at 1122.  Ripeness depends on "whether

the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *United States v. Braren*, 338 F.3d 971, 975 (9th Cir. 2003) (citation omitted).

Here, whether Myers will ever face a criminal prosecution for criminal defamation rests on conjecture about unknown contingencies. The investigation may uncover no evidence of wrongdoing. For that matter, it may uncover evidence of different criminal offenses. But even then, whether any charges would follow would ultimately be subject to prosecutorial discretion. Thus, in addition to Myers lacking standing, his claims are not ripe because they depend "upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998) (citation omitted).

Myers's purported injuries are entirely speculative and hypothetical, and rely on contingencies that may never occur. In light of the preliminary nature of the Sheriff's Office's investigation, and Myers's asserted defense, there is no "imminent" harm; even if the detective's investigation potentially could be seen as a "generalized

threat of prosecution," it would fall short of the "case or controversy" required under Article III.  *Thomas*, 220 F.3d at 1139.  Thus, Myers lacks standing, his claims are not ripe, and this Court should dismiss this action.

## CONCLUSION

For the foregoing reasons, this Court should dismiss this action.

Respectfully submitted this 1st day of June, 2017.

        TIMOTHY C. FOX
        Montana Attorney General
        MATTHEW T. COCHENOUR
        J. STUART SEGREST
        Assistant Attorneys General
        215 North Sanders
        P.O. Box 201401
        Helena, MT 59620-1401

By:   */s/ Matthew T. Cochenour*
       MATTHEW T. COCHENOUR
       Assistant Attorney General
       Counsel for Defendants

## CERTIFICATE OF SERVICE

I hereby certify that on this date I electronically filed the foregoing document with the clerk of the court for the United States District Court for the District of Montana, using the cm/ecf system.

Participants in the case who are registered cm/ecf users will be served by the cm/ecf system.

Dated:  June 1, 2017          */s/  Matthew T. Cochenour*
                                                 MATTHEW T. COCHENOUR
                                                 Assistant Attorney General
                                                 Counsel for Defendants