Robert C. Myers (Montana Bar #11434)
555 Skyfire Drive
Hamilton, MT 59840
406-369-8015
robertcmyers@outlook.com
Pro Se

## UNITED STATES DISTRICT COURT
## DISTRICT OF MONTANA
## HELENA DIVISION

| | |
|---|---|
| ROBERT MYERS, ) | |
| ) | Case No. CV 17-59-M-DWM-JCL |
| Plaintiff, ) | |
| ) | **AMENDED COMPLAINT** |
| v. ) | |
| ) | |
| WILLIAM E. FULBRIGHT, in his official ) | |
| capacity as the County Attorney for Ravalli ) | |
| County; TIMOTHY C. FOX, in his official ) | |
| capacity as Attorney General for the State ) | |
| of Montana,, ) | |
| ) | |
| Defendants. | |
| ) | |

## PRELIMINARY STATEMENT

1. This case arises from the 2016 campaign for Ravalli County District

Judge between Plaintiff Robert Myers and Judge Jeffrey Langton. Myers asserted

during the campaign that Judge Langton was unfit for office. Montana's Office of

Disciplinary Counsel (ODC), the state agency established to enforce the state's

rules of professional conduct, filed two complaints against Myers during the campaign, at least one of which came at the behest of Judge Langton.

2. During the closing weeks of the campaign, Myers published campaign advertisements asserting that Judge Langton had abused his power as a judge by having impermissible conflicts of interest in criminal cases when he was the presiding judge. In one case, he was accused of purchasing drugs from, and providing alcohol to, a 13-year-old boy over whom he later sat in judgment. These allegations are corroborated by sworn affidavits from witnesses.

3. In January 2017, ODC filed a third complaint against Myers based upon these campaign advertisements.  Myers hads since been preparing his defense to this latest ODC complaint, which includes marshaling additional evidence of illegal drug use and other evidence of Judge Langton's abuses of power.

4. On May 1, 2017, these efforts ground to a halt when Myers received a telephone call from the Missoula County Sheriff's Department. A sheriff's detective stated that Judge Langton had filed a criminal defamation complaint against Myers based upon Myers' campaign statements.  The detective stated further that he was "investigating" the criminal complaint and "interviewing" witnesses.

5. After a careful reading of the statute it was determined that the statute Mont. Code Ann. § 45-8-212 did not require falsity as a necessary element of the mens rea of the crime.  It makes chargeable and actionable any defamatory

statement about a person without that person's permission by a party to any other party regardless of whether the statement is true.

6. The statute provides for a justification of truth that must be proved by the defendant subjecting the defendant to prosecution until he or she can prove it is true.

7.  The statute makes the normal privilege for testimony at a hearing or trial a justification as well that must be proved by the defendant.

8. Any statement that is defamatory made during an adjudicatory hearing is actionable if it is defamatory and made without permission.

9. Mr. Myers stopped all communications and investigations concerning Judge Langton's illegal activities for his defense against ODC charges in its third complaint shortly after the recognizing the wide sweep of the statute.

10.   Mr. Myers statements at a now scheduled July 20, 2017 hearing would subject him to a subsequent charge under the statute as Mr. Myers statements are defamatory under the mens rea of the statute.

11.   It would also subject any of Mr. Myers witnesses to subsequent charges for factual statements made during that hearing as those statements are also defamatory under the statute.

12.   The plain sweep of the statute and its minimal mens rea prevented Mr. Myers from marshalling his defenses to the ODC charges.  Mr. Myers did not want to subject himself or his witnesses to prosecution under the statute.

3

13.    Mr. Myers only public statement or document addressing any of the previous allegations and other statements needed for his defense of the ODC charges was a request for objection to an expansion of time for testimony to Mr. Moog of the ODC.  Mr. Myers only listed the statements to be made at the hearing to establish the necessity for more time to present his defense and to show good cause.  A True and Correct Copy of the Proposed Motion for Expansion Time is attached as Exhibit 9.

14.    Mr. Myers will be motioning tomorrow for the Montana Commission on Practice to bifurcate and continue the proceedings regarding ODC's second and third complaints in hope of resolution of this matter prior to the next setting of the Commission on Practice.

15.    Mr. Myers constitutional right to both speak and to defend himself is violated and prevented by the plain sweep of the statute.

16.    The statute also prevents Mr. Myers from reaching out to other legal organizations that might have an interest in this case such as the American Civil Liberties Union, the Cato Institute, and parent-child advocacy organizations.

17.    Mr. Myers will seek the participation of these organization to submit amicus curiae briefs for the purposes of this action and for the purposes of post hearing appeals to ODC complaints 2 and 3.

18.    Even Mr. Myers factual claims in this complaint subject him to

4

prosecution under the statute.

19.    The statute prevents Mr. Myers from speaking out concerning Judge Langton's activities and about the connection between Judge Langton and the other corruption in Ravalli County, Montana, as any of Mr. Myers statements that he will make concerning Judge Langton and County Attorney Bill Fulbright are actionable under the statute regardless of the truth of the statements.

20.    Each statement of about Judge Langton and Bill Fulbright that is to be made meets the definition of defamatory under M.C.A. § 45-8-212 and is chargeable. "Defamatory matter is anything that exposes a person or a group, class, or association to hatred, contempt, ridicule, degradation, or disgrace in society or injury to the person's or its business or occupation."

21.    Myers is therefore asking this Court to promptly strike down Montana's criminal defamation statute as unconstitutional not only to prevent himself from being illegally prosecuted in a criminal proceeding, but to prevent his witnesses to testify without subjecting them to being charged with criminal defamation.

## JURISDICTION AND VENUE

22.    This Court has jurisdiction under 28 U.S.C. §§1331, 1343, 42 U.S.C. §1983, and the First and Fourteenth Amendments to the United States Constitution.

23.     Venue for this action properly lies in the Missoula Division of the

District of Montana because Defendant Fulbright is believed to reside within the

Missoula Division.

## PARTIES

24. Plaintiff Robert Myers resides in Ravalli County in the State of Montana and is licensed to practice law in the State of Montana.

25. Defendant William Fulbright is the County Attorney for Ravalli County. He is responsible for prosecuting violations of Montana criminal statutes committed within the county, including Mont. Code Ann. § 45-8-212, the state's criminal defamation statute. Myers is informed, believes, and therefore alleges that Defendant Fulbright resides in Ravalli County in the State of Montana.

26. Defendant Timothy Fox is Montana's Attorney General and has authority to investigate and prosecute violations of Montana's criminal statute by and through the county attorneys under his supervision. Myers is informed, believes, and thereon alleges that Defendant Fox resides in Lewis & Clark County in the State of Montana.

## STATEMENT OF FACTS

### I.    Commencement of Myers' Campaign to Challenge Judge Langton

27. On or about January 14, 2016, Judge Langton announced his campaign for re-election to the position of District Judge for the Twenty-First Judicial District of Montana, Department 1.

28. The boundaries of the Twenty-First Judicial District of Montana are

coterminous with those of Ravalli County, Montana.

29. On or about March 15, 2016, Myers announced his campaign to seek election to District Judge for the Twenty-First Judicial District of Montana, Department 1.

30. Myers' campaign included informing voters that Judge Langton was unfit for office by describing for voters instances in which he abused his power.

31. For example, the Montana Supreme Court publicly reprimanded Judge Langton in September 2005 for his "conduct involving past alcohol abuse and related incidents."

32. A true and correct copy of this reprimand is attached as Exhibit 1.

33. This was a reference to Judge Langton's arrest and conviction for driving a motor vehicle in February 2005 while his blood alcohol content was over twice the legal limit.

34. At the time Langton was arrested for drunk driving, he told the officer, "I hope you know what you are doing."

35. On June 11, 2005, police found Judge Langton passed out drunk in a hotel hallway in Missoula in violation of the terms of a court order to refrain from consuming alcohol.

36. In January 2006, Robert Deschamps (who is now a Montana district court judge) issued a report involving an additional violation by Judge Langton of

the court's order not to visit bars and other locations where alcohol is served.

## II. <u>ODC's First Complaint Against Myers</u>

37. A month after Myers announced his candidacy in March 2016, ODC filed a complaint against Myers.

38. A true and correct copy of this complaint (Case No. PR-16-0245, filed April 22, 2016), is attached as Exhibit 2.

39. The complaint contains allegations of professional misconduct allegedly occurring in 2013 and 2014 during a divorce matter in which Myers was counsel of record.

40. ODC waited until a month after Myers declared his candidacy in March 2016 before filing the complaint.

## III. <u>ODC's Second Complaint Against Myers</u>

41. On or about April 30, 2016, the *Ravalli Republic* newspaper contacted Myers for his response to the ODC complaint.

42. Myers provided a written statement asserting, *inter alia*, that Judge Langton abused his position of power.

43. A true and correct copy of the statement is attached as Exhibit 3.

44. On May 1, 2016 the *Ravalli Republic* published an article concerning the

complaint as well Myers' response.[1]

45. Later in May 2016, Judge Langton's law clerk complained to ODC about Myers' campaign statements.

46. ODC responded with what this Court later described as a "fishing expedition"[2] against Myers by demanding that he "provide ODC with digital copies of all published campaign materials, whether written, video, or audio, including all television or radio advertisements, with written transcripts, aired by your campaign. ODC also requires the invoices and publishing contracts related to all advertising materials, including the publishing dates and frequency of all materials." ODC also demanded that Myers to produce "any internet/social network posting by yourself, your campaign, or affiliated campaign committees/groups."

47. A true and correct copy of these demands is attached as Exhibit 4.

48. Myers responded by filing an action in this Court on June 6, 2016, challenging the constitutionality of various disciplinary rules prohibiting attorneys from making false or misleading statements against a judicial officer.[3]

---

[1] A copy of the story can be found at <ravallirepublic.com/news/local/article_05d0cf56-0f17-11e6-ae26-9b8160403b42.html>

[2] See *Myers v. Thompson,* (9th Cir. No. 16-35540), DktEntry 8-2, ER 56.

[3] See *Myers v. Thompson* (D. Mont., CV-16-45-H-DWM-JCL), *ECF No. 1.*

49. ODC filed another disciplinary complaint, (Case No. PR 16-0411), against Myers on July 15, 2016.

50. A true and correct copy of this complaint is attached as Exhibit 5.

51. Among other allegations, the complaint alleges that Myers' accusation to the *Ravalli Republic* concerning Judge Langton's abuse of power was false. Exhibit 5, ¶¶ 14-15.

52. On September 12, 2016, Myers filed an amended complaint in this Court in which Myers identified his statement to the *Ravalli Republic* as one of his campaign statements.[4]

53. Myers asserted that the rules that ODC was attempting to use to discipline him were unconstitutional on their face and as applied to him.

54. Myers intends to show that, even if the rules are constitutional on their face, they cannot be constitutionally applied to him because his allegations of abuse of power by Judge Langton are true.

55. He intends to show this by, *inter alia*, offering testimony from witnesses who have observed Judge Langton using illegal drugs and have witnessed other instances of abuses.

*56.* On September 26, 2016, Myers supplemented his witness list in *Myers v. Thompson* in accordance with Fed. R. Civ. Proc. 26(a), by identifying Rex Walker

---

[4] See *Myers v. Thompson* (D. Mont., CV-16-45-H-DWM-JCL), *ECF No. 40*

as someone who was "expected to testify that he was on juvenile probation under Judge Langton and that Judge Langton abused his authority in his dealings with Mr. Walker."

57. A true and correct copy of this disclosure is attached as Exhibit 6.

58. In that same disclosure, Myers identified Heather Portner as someone who was "expected to testify with regard to how Judge Langton abused his power when he sentenced her ex-boyfriend and ordered his incarceration in state prison."

## IV.  ODC's Third Complaint Against Myers

59. On October 11, 2016, Myers obtained from Rex Walker a sworn affidavit stating that Walker sold methamphetamine to Judge Langton on several occasions when Mr. Walker was thirteen years of age. The affidavit also alleges that Judge Langton provided Mr. Walker alcohol when he delivered the methamphetamine to Judge Langton's house. It also states that Judge Langton later sat in judgment of Mr. Walker.

60. A true and correct copy of this affidavit is attached as Exhibit 7.

61. On October 13, 2016, Myers obtained from Robert Farmer a sworn affidavit stating that Heather Portner had admitted to Farmer that she and Judge Langton used illegal drugs together and that Heather Portner had a sexual relationship with Judge Langton.

62. A true and correct copy of this affidavit is attached as Exhibit 8.

63. In October 2016, Myers' campaign advertising included allegations that witnesses had "come forward with first-hand knowledge of Langton's drug use but are afraid of retaliation. Fear of retaliation was the primary reason that the recall petition against Langton failed…."

64. Langton defeated Myers at the polls on November 8, 2016.

65. ODC filed a third complaint, (Case No. PR 17-0026), against Myers on January 13, 2017, based upon Myers' campaign advertisements published in October 2016.

66. A true and correct copy of this complaint is attached as Exhibit 9.

67. Myers began preparing his defense to the allegations contained in PR 17-0026.

68. This defense includes attempting to locate and interview other persons who have witnessed Judge Langton using illegal drugs and other instances of his abuse of power.

### V.    The Criminal Defamation Complaint & "Investigation" of Witnesses Who Can Corroborate Evidence of Illegal Drug Use by Judge Langton

69. On May 1, 2017, Detective Garrett Van Hoose of the Missoula County Sheriff's Office left a telephone message for Myers and requested that Myers

contact him.

70. Myers did so moments later and inquired as to the reason for the message.

71. Detective Van Hoose informed Myers that Judge Langton had filed a criminal defamation complaint against Myers based on Mont. Code Ann. § 45-8-212.

72. Detective Van Hoose stated that the complaint had been forwarded from the Ravalli County Sheriff's Office to the Missoula County Sheriff's Office for investigation.

73. Myers asked Detective Van Hoose about the subject matter of the investigation.

74. Detective Van Hoose stated that the complaint was based upon Myers' campaign advertising published during the last part of the 2016 campaign for district court judge.

75. Detective Van Hoose identified persons he was seeking to interview, including Rex Walker, Robert Farmer, and Heather Portner.

76. Myers explained to Detective Van Hoose that he was very careful in preparing his campaign advertising and had affidavits from both Farmer and Walker to support the claims he made in his campaign advertising.

77. Detective Van Hoose stated that when the Missoula County Sheriff's

Department completes its investigation; the Department would forward a report to the Ravalli County Attorney's Office.

## VI.   First Amendment Liberties Proscribed by M.C.A. § 45-8-212 by that Mr. Myers Would Otherwise Make

78. The real and reasonable fear of prosecution under M.C.A. § 45-8-212 has prevented Mr. Myers from preparing his defense against the government's disciplinary proceedings and has inhibited him from speaking with witnesses concerning Judge Langton's misconduct.

79. Mr. Myers has not requested the issuance of any subpoenas for the July 20, 2017 for this very reason.

80. Mr. Myers will have to speak and present evidence of facts as shown in Exhibit 9.

81. Mr. Myers will be prevented from his desire to assistance from other interested entities such as the American Civil Liberties Union, the Cato Institute, and child and parental rights organizations for amicus curiae briefs for this action and for any post hearing appeals in the ODC proceedings as each communication will violate the statute.

82. Mr. Myers will speak by publication of his own reports of corruption in Ravalli County government and the dangerous threat to children that is posed by Jeff Langton but is precluded from doing so because any statement he will make violates the mens rea requirement of M.C.A. § 45-8-

212.

83.  Myers fully intends to publish these reports through mainstream and alternative media such as a blog and a website he will be developing but is precluded from actuating through fear of violating Montana's criminal defamation statute.

**VII.   Specific Allegations Concerning Judge Langton and Bill Fulbright that Mr. Myers Necessarily Would Need to Make in His Defense Before the ODC Hearing and That Mr. Myers Would Otherwise Communicate Freely to the Public but is Prohibited from doing so by M.C.A. § 45-8-212.**

84. Jeff Langton without legal authority and without notice allowed the seizure of the children of Mikki Pruitt

85. Mikki Pruitt was living in Toole County Montana with her three children for at least three months.

86. Jeff Langton had no prior or continuing jurisdiction over the children in Ravalli County.

87. This seizure was without jurisdiction under Montana Law (See M.C.A. 40-4-211(4)(B)).

88. There was no notice to Mikki Pruitt (See M.C.A. 40-4-211(5) prior to the order to seize the children.

89. Mikki Pruitt had no money to hire a lawyer and had to wait several months before finding a pro bono attorney.

90. The attorney didn't seek a writ of habeas corpus to return the children to Mikki.

91. Jeff Langton awarded the children to the children's grandfather and step grandfather despite the findings to the contrary in a prior investigation in Toole County by Toole County Child Protective Services.

92. Approximately a year later it was discovered that there was a high probability that the grandfather impregnated Mikki's daughter and the grandfather's own eleven-year-old granddaughter.

93. Mikki was informed by frustrated Ravalli County Sheriff's deputies that County Attorney Bill Fulbright refused to act upon this information and remove the children from the grandfather.

94. Mikki violating Jeff Langton's unlawful order rescued the children from their grandfather before he could leave the state with them.

95. Based upon first-hand information from an informant that Jeff Langton used his own teenage daughter to secure illegal drugs for himself.

## CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF

**Montana's Criminal Defamation Statute Violates the Free Speech Clause of the First Amendment to United States Constitutional On Its Face**

96. All previous paragraphs are incorporated by reference.

97. Section 45-8-212 of the Montana Code Annotated imposes criminal

17

penalties for defamation.

98. The statute violates the First Amendment on its face.

99. Until this Court grants relief, Myers will continue to suffer irreparable injury to his First Amendment right to defend against the government's attorney disciplinary proceedings through his speech at the ODC hearings, his First Amendment Rights to communicate with the in general public and with parties that have an interest in the legal issue that are presented in the ODC hearings and in the First Amendment actions before this Court.

100.  Myers is therefore entitled to immediate declaratory and injunctive relief from this Court.

## SECOND CLAIM FOR RELIEF

**Montana's Criminal Defamation Statute Violates the Free Speech Clause of the First Amendment to United States Constitution as Applied to Myers**

101.  All previous paragraphs are incorporated by reference.

102.  Myers has never made an accusation about Judge Langton with actual malice.

103.  Moreover, the criminal defamation "investigation" initiated by Judge Langton as a result of Myers' allegations of misconduct by Judge Langton will chill witnesses of ordinary firmness from corroborating those allegations.

104.  Myers is therefore entitled to immediate declaratory and injunctive relief from this Court.

## <u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff Robert Myers requests the Court grant the following relief:

a)  Declare that Mont. Code Ann. § 45-8-212, is unconstitutional;

b) Enjoin Defendants from enforcing Mont. Code Ann. § 45-8-212;

c) Award Myers nominal damages against Defendants;

d) Award Myers his costs of litigation, including reasonable attorneys' fees and expenses, pursuant to 42 U.S.C. § 1988; and

19

e) Grant such other relief to which Plaintiff Myers may be entitled, or as

this Court deems necessary and proper.

DATED: July 12, 2017

Respectfully submitted,

 /s/ ROBERT C. MYERS
Robert C. Myers Pro Se

## CERTIFICATE OF SERVICE

I hereby certify that on this date I electronically filed the foregoing document with the clerk of the court for the United States District Court for the District of Montana, using the CM/ECF system.  Participants in the case who are registered CM/ECF users will be served by the CM/ECF system

 /s/ ROBERT C. MYERS
Robert C. Myers Pro Se

20