Robert C. Myers (Montana Bar #11434)
555 Skyfire Drive
Hamilton, MT 59840
406-369-8015
robertcmyers@outlook.com
Pro Se

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MONTANA**
**HELENA DIVISION**

| | | |
|---|---|---|
| ROBERT MYERS,<br><br>Plaintiff,<br><br>v.<br><br>WILLIAM E. FULBRIGHT, in his official capacity as the County Attorney for Ravalli County; TIMOTHY C. FOX, in his official capacity as Attorney General for the State of Montana,,<br><br>Defendants. | ) | Case No. CV 17-59-M-DWM-JCL<br><br>**PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS** |

## TABLE OF AUTHORITIES


| CASES | PAGE |
|---|---|
| *Abbott Labs. v. Gardner*, 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967) | 22 |
| *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, (1979) | 14, 15, 20 |
| *Beach v. City of Redondo Beach*, 657 F.3d 936, 946-94 7 11 Cal. Daily Op. Serv. 11888, 2011 Daily Journal D.A.R. 14139 (9th Cir., 2011) | 18 |
| *Bradstreet, Inc v. Greenmoss Builders, Inc.*, 472 U.S. 749, 105 S.Ct. 2939, 86 L.Ed.2d 593 (1984) | 7, 11 |
| *Bd. of Airport Comm'rs v. Jews for Jesus, Inc.*, 482 U.S. 569, 107 S.Ct. 2568, 96 L.Ed.2d 500 (1987) | 18 |
| *Carey v. Brown*, 447 U.S. 455, 100 S.Ct. 2286, 65 L.Ed.2d 263 (1980) | 3 |
| *City of Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S. 750, 108 S.Ct. 2138, 100 L.Ed.2d 771 (1988) | 18 |
| *Colwell v. HHS,* 558 F.3d 1112, (9th Cir.2009) | 23 |
| *Connick v. Myers*, 461 U.S. 138 (1983) | 3 |
| *Diamond v. Charles*, 476 U.S. 54, 106 S.Ct. 1697, 90 L.Ed.2d 48 (1986) | 14, 21 |
| *Doe v. Bolton*, 410 U.S. 179, 188, 93 S.Ct. 739, 35 L.Ed.2d 201 (1973) | 15, 20 |

Garrison v. Louisiana, 379 U.S. 64,

85 S.Ct. 209, 13 L.Ed.2d 125 (1964) 3, 4, 7, 11

*Gertz v. Robert Welch, Inc.*, 418 U.S. 323,

94 S.Ct. 2997, 41 L.Ed.2d 789 (1974) 11

*Examining Bd. v. Flores de Otero,* 426 U.S. 572

96 S.Ct. 2264, 49 L.Ed.2d 65 (1976) 24

*First Nat'l. Bank of Bos. v. Bellotti*, 435 U.S. 765(1978) 3

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,

528 U.S. 167 (2000) 12

*Foti v. City of Menlo Park*, 146 F.3d 629 (9th Cir.1998) 17

*Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992) 12

*Mangual v. Rotger-Sabat*, 317 F.3d 45, 56 (1st Cir., 2003) 15, 23, 24

*Maya v. Centex Corp.*, 658 F.3d 1060, 1068 (9th Cir.2011) 12

*Meese v. Keene*, 481 U.S. 465,

107 S.Ct. 1862, 95 L.Ed.2d 415 (1987) 20

*N.H. Right to Life PAC v. Gardner*, 99 F.3d 8,

(1st Cir. 1996) 15, 16, 20

*Philadelphia Newspapers, Inc v. Hepps*, 475 U.S. 767,

106 S.Ct. 1558, 89 L.Ed.2d 783 (1986) 7, 8

*Poe v. Ullman*, 367 U.S. 497,

81 S.Ct. 1752, 6 L.Ed.2d 989 (1961) 15

*Pub. Serv. Comm'n v. Wycoff Co.*, 344 U.S. 237,

73 S.Ct. 236, 97 L.Ed. 291 (1952) 22

*Reg'l Rail Reorganization Act Cases*, 419 U.S. 102,

95 S.Ct. 335, 42 L.Ed.2d 320 (1974) 22

*Reno v. ACLU*, 521 U.S. 844,
117 S.Ct. 2329, 138 L.Ed.2d 874 (1997) 18

*R.I. Ass'n of Realtors*, 199 F.3d 26 15, 22

*Snyder v. Phelps*, 562 U.S. 443 (2011) 3

*State v. Helfrich*, 922 P.2d 1159,
277 Mont. 452 (Mont., 1996) 19

*State v. Reynolds*, 2004 MT 364,
324 Mont. 495, 104 P.3d 1056 (2004) 9

*Steffel v. Thompson*, 415 U.S. 452,
94 S.Ct. 1209, 39 L.Ed.2d 505 (1974) 20

*Virginia v. Am. Booksellers Ass'n*, 484 U.S. 383,
108 S.Ct. 636, 98 L.Ed.2d 782 (1988) 18, 20

*Warth v. Seldin*, 422 U.S. 490,
95 S.Ct. 2197, 45 L.Ed.2d 343 (1975) 12

*Wisconsin v. Constantineau*, 400 U.S. 433, 91 S.Ct. 507 24


**TREATISES**


1 L. Tribe, *American Constitutional Law* § 3-10 (3d ed.2000) 22


**STATUTE**


M.C.A. 45-8-212 passim

# TABLE OF CONTENTS

| | | PAGE |
|---|---|---|
| I. | STATEMENT OF FACTS | 1 |
| | A. 2016 Campaign Advertising and Basis for Criminal Defamation Complaint by Judge Langton. | 1 |
| | B. Investigation by Missoula County Sheriff's Office | 4 |
| | C. Chilling of Plaintiff's Speech by a Real and Reasonable Fear of Prosecution under Mont. Code. Ann. § 45-8-212 | 4 |
| II. | M.C.A. § 45-8-212 IS FACIALLY UNCONSTITUTION | 7 |
| III. | THE PLAINTIFF HAS STANDING | 12 |
| IV. | THE CASE IS RIPE FOR REVIEW | 21 |
| V. | ABSTENTION IS INAPPROPRIATE AND IMPERMISSIBLE | 24 |
| VI. | CONCLUSION | 24 |

# I. STATEMENT OF FACTS

## A. 2016 Campaign Advertising and Basis for Criminal Defamation Complaint by Judge Langton.

The Plaintiff, Robert Myers, was a candidate for the Twenty-First Judicial District of Montana in 2016. During that campaign three sets of information came to the Plaintiff concerning his opponent, Judge Jeffrey Langton. The first set of information was a claim by a Mr. Rex Walker that Judge Langton bought methamphetamines three times from Mr. Walker who was at the time a thirteen-year-old. Additionally, Judge Langton was the presiding Judge in Mr. Walker's juvenile criminal case. Mr. Walker provided an affidavit to Mr. Myers verifying and swearing to the facts that Mr. Walker told the Plaintiff. Two radio ads were run in October and November referencing the purchasing of methamphetamines by Judge Langton. (Amended Complaint ¶ 2, 59, 60, 66)

The second set of information came from a Mr. Robert Farmer attesting and swearing to the fact that a Heather Portner had confessed to him and his wife Lisa Farmer that Portner had a sexual and drug relationship with Judge Langton before Judge Langton sentenced Portner's ex-boyfriend Bryce Peterson to prison. Portner was the alleged victim of Mr. Peterson. (Amended Complaint ¶ 61, 62, 66) A

political mailer was sent to the voters of Ravalli County based upon this sworn statement. The sworn statements of Mr. Walker and Mr. Farmer both dealt with allegations of serious violations compromising the integrity of the Montana system of Justice by Judge Langton.

The third set of information was obtained from a Ms. Mikki Pruett who narrated an ad that ran in late October and November of 2016 accusing Judge Langton of judicial incompetence and ignoring clear Montana law resulting in the rape and impregnation of Mikki Pruett's 11-year-old daughter by the girl's own grandfather. (Amended Complaint ¶ 66, 84-94)

This advertising was political speech based upon the sworn statements of those who made the claims or by the person herself narrating the ad in which the accusations were aired. These ads and the statements of the parties providing the information are protected speech of the highest order. Political speech is core First Amendment speech, critical to the functioning of our democratic system. The Plaintiff and the those who made the claims to the Plaintiff is the type of speech that rests on the highest rung of the hierarchy of First Amendment values. See *Carey v. Brown*, 447 U.S. 455, 467, 100 S.Ct. 2286, 65 L.Ed.2d 263 (1980); see also *Garrison v. Louisiana*, 379 U.S. 64, 74-75, 85 S.Ct. 209, 13 L.Ed.2d 125 (1964) ("Speech concerning public affairs is more than self-expression; it is the essence of self-government.")

Furthermore, The First Amendment protects the public's right of access to information about their officials' public activities. It "goes beyond protection of the press and the self-expression of individuals to prohibit government from limiting the stock of information from which members of the public may draw." *First Nat'l. Bank of Bos. v. Bellotti*, 435 U.S. 765, 783 (1978). Access to information regarding those who administer the system of justice is particularly important because it leads to citizen discourse on public issues and sits at the highest rung of the hierarchy of First Amendment values, and is entitled to special protection. See *Snyder v. Phelps*, 562 U.S. 443, 452 (2011) (quoting *Connick v. Myers*, 461 U.S. 138, 145 (1983)); *Garrison v. Louisiana*, 379 U.S. 64, 77 (1964) (recognizing the "paramount public interest in a free flow of information to the people concerning public officials, their servants"). The citizen and voters of Ravalli County and the State of Montana in general have a right to hear of complaints and facts about the public actions of Judge Langton a public official. Those making the allegations have a right to express those allegations.

**B. Investigation by Missoula County Sheriff's Office.**

On May 1, 2017, the Plaintiff was contacted by Detective Garret Van Hoose of the Missoula County Sheriff's Office informing the Plaintiff that Judge Langton had filed a criminal defamation complaint against him based on Mont. Code Ann. § 45-8- 212. Detective Van Hoose stated that the complaint was based on campaign

advertising during the last part of 2016 campaign for district court judge. Detective Van Hoose informed the Plaintiff of the persons he was seeking to interview included Rex Walker, Robert Farmer, and Heather Portner. (Amended Compliant ¶ 69-77)

**C. Chilling of Plaintiff's Speech by a Real and Reasonable Fear of Prosecution under Mont. Code Ann. § 45-8- 212.**

The Plaintiff after reviewing the structure of Mont. Code Ann. § 45-8- 212 and making the determination that the statute subjects the Plaintiff to liability without fault for merely communicating a defamatory statement to a third party without permission, withheld from any further investigation of the nefarious activities. (Amended Complaint ¶ 5-12) The Plaintiff did not want to subject those relating information to him, because under the statute they could be charged regardless of whether the information was true. (Amended Complaint ¶ 11-12, and 78)

A real and reasonable fear of prosecution under the statute prevented the Plaintiff from preparing his defense against the government's disciplinary proceedings, inhibited him from speaking with witnesses, issuing subpoenas for witnesses for the July 20, 2017 disciplinary hearings, presenting evidence in defense of his license to the ODC charges, and seeking assistance from other interested entities such as the American Civil Liberties Union, the Cato Institute,

and child and parental rights organizations for assistance in this action and any post hearing appeals to ODC hearings as each communication will violate the statute. (Amended Complaint ¶ 5-21, and 78-81)

The statute prevents Mr. Myers from speaking out concerning Judge Langton's activities and about the connection between Judge Langton and the other corruption in Ravalli County, Montana, as any of Mr. Myers statements that he will make concerning Judge Langton and County Attorney Bill Fulbright are actionable under the statute regardless of the truth of the statements. (Amended Complaint ¶19)

Each statement of about Judge Langton and Bill Fulbright that is to be made meets the definition of defamatory under M.C.A. § 45-8-212 and is chargeable. "Defamatory matter is anything that exposes a person or a group, class, or association to hatred, contempt, ridicule, degradation, or disgrace in society or injury to the person's or its business or occupation." (Amended Complaint ¶ 20)

Mr. Myers will speak by publication of his own reports of corruption in Ravalli County government and the dangerous threat to children that is posed by Jeff Langton but is precluded from doing so because any statement he will make violates the mens rea requirement of M.C.A. § 45-8-212. (Amended Complaint ¶ 81)

Myers fully intends to publish these reports through mainstream and alternative media such as a blog and a website he will be developing but is precluded from actuating through fear of violating Montana's criminal defamation statute. (Amended Compliant ¶ 82)

Mr. Myers will investigate further and publish the story surrounding an accusation made to Ms. Pruitt that Bill Fullbright knew that Nikki Pruitt's daughter had likely been impregnated by the girl's own grandfather but refused to remove the girl from the home. (Amended Complaint ¶93).

Mr. Myers will investigate and publish a story concerning an accusation that Jeff Langton used his own daughter to purchase drugs for him. (Amended Compliant ¶ 95)

## II. M.C.A. § 45-8-212 IS FACIALLY UNCONSTITUTION AND SUBSTANTIALLY OVERBROAD

Montana's criminal defamation statute M.C.A. 45-8-212 is facially unconstitutional. It proscribes speech concerning both public figures and public concerns protected under the First and Fourteenth Amendments without requiring in the mens rea of the crime that the speaker or the publisher of a statement knew that the statement was false or made the statement or publication with a high probability that the statement or publication was false. *Garrison v. Louisiana*, 379 U.S. 64, 77-78 (1964)

M.C.A. 45-8-212 is also facially unconstitutional in that the truth of the publication or statement is an affirmative defense which under Montana law requires the defendant to prove that the statement or publication was true. This is an unconstitutional and impermissible shifting of burden that applies equally to private party criminal defamation as it does to criminal defamation concerning public persons or public concerns. *Philadelphia Newspapers, Inc v. Hepps*, 475 U.S. 767, 776 106 S.Ct. 1558, 89 L.Ed.2d 783 (1986) *Dun Bradstreet, Inc v. Greenmoss Builders, Inc*., 472 U.S. 749, 763 105 S.Ct. 2939, 86 L.Ed.2d 593 (1984).

M.C.A. 45-8-212 defines criminal defamation as anything that exposes a person or a group, class, or association to hatred, contempt, ridicule, degradation, or disgrace in society or injury to the person's or its business or occupation. This definition differs markedly from Montana's definition of libel found in M.C.A. 27-1-802 which states: Libel is a false and unprivileged publication by writing, printing, picture, effigy, or other fixed representation that exposes any person to hatred, contempt, ridicule, or obloquy or causes a person to be shunned or avoided or that has a tendency to injure a person in the person's occupation.

First M.C.A. 27-1-802 properly places the burden on the plaintiff to prove that the allegedly defamatory statement is false and that the statement or publication must be false to be actionable. *Philadelphia Newspapers*, Id.

Second, the statute's use of the word unprivileged in the definition allows a defendant to move to dismiss the complaint based on privileges found in M.C.A. 27-1-804.[1] These privileges mirror to a great respect section 3 of M.C.A. 45-8-212[2]. The difference in M.C.A. 45-8-212 is that truth and identified privileges are a justification to the violation of the statute but place the burden on the defendant facing a criminal defamation charge to prove both truth and the privilege. Under Montana law a defendant has the burden of proving an affirmative defense, . . . and if there are conflicting facts regarding the availability of an affirmative defense in a criminal trial, the issue is properly submitted to a jury. *State v. Reynolds*, 2004 MT 364, ¶ 9, 324 Mont. 495, 104 P.3d 1056.

---

[1] (1) in the proper discharge of an official duty;
(2) in any legislative or judicial proceeding or in any other official proceeding authorized by law;
(3) in a communication without malice to a person interested therein by one who is also interested or by one who stands in such relation to the person interested as to afford a reasonable ground for supposing the motive for the communication innocent or who is requested by the person interested to give the information;
(4) by a fair and true report without malice of a judicial, legislative, or other public official proceeding or of anything said in the course thereof.

[2] 3) Violation of subsection (2) is justified if:
(a) the defamatory matter is true;
(b) the communication is absolutely privileged;
(c) the communication consists of fair comment made in good faith with respect to persons participating in matters of public concern;
(d) the communication consists of a fair and true report or a fair summary of any judicial, legislative, or other public or official proceedings; or
(e) the communication is between persons each having an interest or duty with respect to the subject matter of the communication and is made with the purpose to further the interest or duty.
(4) A person may not be convicted on the basis of an oral communication of defamatory matter except upon the testimony of at least two other persons that they heard and understood the oral statement as defamatory or upon a plea of guilty or nolo contendere.

The statute makes it a crime to communicate defamatory matter to a third person without the consent of the person defamed.[3] The knowledge requirement of the statute requires only that the defendant knew of the defamatory character of the statement and that the defendant communicated it to a third party without consent. Further, Montana M.C.A. 45-2-101 defines Knowingly: [W]hen existence of a fact is an element of an offense knowledge is established if a person is aware of a high probability of its existence (M.C.A. 45-2-101). Any person who makes a statement concerning another person which exposes that person to contempt, degradation, or disgrace in society or causes injury to that person's business or occupation is guilty of the crime.

For example, Bob says to his friend Bill in a phone call that Sally had told him that Christoff was having an affair with his secretary Jillian and that he was allowing Jillian to steal money from his company. Bob tells Bill that Christoff had raised his costs to his customers to cover the costs of Sally's embezzlement. All of the parties are private individuals without a hint that there is either a public concern or a public person. Whether Bill is a customer of Christoff is irrelevant. Bob and Sally are guilty of the criminal defamation as Sally's statement to Bob

[3] (2) Whoever, with knowledge of its defamatory character, orally, in writing, or by any other means, including by electronic communication, as defined in 45-8-213, communicates any defamatory matter to a third person without the consent of the person defamed commits the offense of criminal defamation and may be sentenced to imprisonment for not more than 6 months in the county jail or a fine of not more than $500, or both.

and Bob's statements to Bill exposed John and Jillian to hatred, contempt, ridicule, degradation, or disgrace in society. It would be easy for the prosecution to show that the Bob and Sally's knew that their statements had a defamatory character. Under the statute, it doesn't matter that the statements were true or false. Bob and Sally have violated the statute unless they asked Christoff and Jillian if they could tell other people about it. The mens rea of the crime does not require that the statement was false or privileged in any manner.

The statute fails the standards set forth for First Amendment protection by requiring Bob and Sally to prove that the statement was true. Private party defamation requires that plaintiff prove by at least a negligence standard that Bob and Sally's statements were false. Former Chief Justice Berger summed up the state of the law concisely: In *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974), "contrary to well-established common law prevailing in the states, a divided Court held that a private plaintiff in a defamation action cannot recover for a published falsehood unless he proves that the defendant was at least negligent in publishing the falsehood." (BURGER, concurring in the judgment) *Dun Bradstreet, Inc v. Greenmoss Builders, Inc*., 472 U.S. 749, 763 105 S.Ct. 2939, 86 L.Ed.2d 593 (1984). M.C.A. 45-8-212 is unconstitutional as to private parties as it is to statements made concerning public persons or public

concerns where actual malice is required in the mens rea of the crime. *Garrison v. Louisiana*, 379 U.S. 64, 77-78 (1964)

M.C.A. 45-8-212 proscribes all allegedly defamatory speech in any place at any time and to any degree with only the possibility that once charged the defendant must prove that the statements were true to escape liability. The prosecution in the meantime or prior to a charge can seek the issue warrants from other judges (who are associated with Judge Langton) to search and seize personal property such as computers, cell phones, etc. The defending party will likely have to secure representation and the public stigma associated with being criminally charged.

## III. THE PLAINTIFF HAS STANDING

To have standing, a plaintiff must have a "personal interest . . . at the commencement of the litigation." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 170 (2000). The personal interest must satisfy three elements throughout litigation: (1) an injury in fact, *i.e.*, an invasion of a legally protected interest that is concrete and particularized, as well as actual or imminent; (2) a causal connection between the injury-in-fact and the defendant's challenged behavior; and (3) likelihood that the injury-in-fact will be redressed by

a favorable ruling. *Id*. at 180-81, 189; *Lujan v*. *Defs*. *of Wildlife*, 504 U.S. 555, 560 (1992).

In determining Article III standing, the court "accept as true all material allegations of the complaint" and "construe the complaint in favor of the complaining party." *Maya v. Centex Corp.*, 658 F.3d 1060, 1068 (9th Cir.2011) (quoting *Warth v. Seldin*, 422 U.S. 490, 501, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975)).

Here the Plaintiff has engaged in communications that are core political speech proscribed by the sweeping plain language of M.C.A. 45-8-212. The Plaintiff has estopped himself from engaging any further communication concerning Judge Langton as each communication is proscribed by the M.C.A. 45-8-212, and the Plaintiff has refrained from and will continue to refrain from any comment or communication concerning Judge Langton of the subjects raised in the Plaintiff's Amended Complaint. The Plaintiff has a vested personal interest in his right to core first amendment speech that has been proscribed by M.C.A. 45-8-212. M.C.A. 45-8-212. Carey, Id. and preventing the free flow of information to the public concerning the public activities of an administrator of justice in the State of Montana. *Garrison*, Id., at 77. The Plaintiff has a personal interest in his right to speech that is being proscribed by M.C.A. 45-8-212.

The invasion of the Plaintiff's free speech rights are concrete and particularized (See above as provided in the Amended Complaint) while listing only in part what the Plaintiff knows without further risking his sources and himself to further liability under M.C.A. 45-8-212. The invasion of the Plaintiff's interest in his right to free speech is actual and continuing and the violation of that right is not only imminent but is taking place.

There is a direct relationship between the protected interest of the Plaintiff in his right to free speech and the public's right to know and the proscription of those rights by a state criminal speech statute that sweeps all-encompassingly and unconstitutionally into every communication concerning the behavior of an elected public official as any statement concerning Judge Langton in the context of the Amended Complaint is defamatory and is chargeable regardless of the truth of the statement.

The invasion of the Plaintiff's right to free speech and the public's right to know would be redressed by a favorable ruling of this Court as there would be no proscription of the Plaintiff's or the public's rights if the statute is held to be unconstitutional.

A paradigm of a case or controversy under Article III is a challenge to a statute that imposes criminal penalties for constitutionally protected activities by a

person likely to be subject to the statute. *Diamond v. Charles*, 476 U.S. 54, 64, 106 S.Ct. 1697, 90 L.Ed.2d 48 (1986).

A plaintiff who challenges a statute must demonstrate a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement. But [o]ne does not have to await the consummation of threatened injury to obtain preventive relief. If the injury is certainly impending, that is enough." *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979) (alteration in original) (quotation marks and citations omitted). It is sufficient to show that "a credible threat of prosecution" exists "[w]hen the plaintiff has alleged an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by [the challenged] statute." *Id*. The bar for such a showing is low. The Supreme Court has found a credible threat of prosecution even when the government has never enforced the statute but "has not disavowed any intention of invoking" the statute's penalties. *Id*. at 302. "[C]ourts will assume a credible threat of prosecution in the absence of compelling contrary evidence." *N.H. Right to Life PAC v. Gardner*, 99 F.3d 8, 15 (1st Cir. 1996)

The Supreme Court has often found standing to challenge criminal statutes on First Amendment grounds even when those statutes have never been enforced. *See, e.g., Babbitt*, 442 U.S. at 302, 99 S.Ct. 2301; *Doe v. Bolton*, 410 U.S. 179, 188, 93 S.Ct. 739, 35 L.Ed.2d 201 (1973)*Doe*, 410 U.S. at 188, 93 S.Ct. 739; *see*

*also R.I. Ass'n of Realtors*, 199 F.3d 26, at 32 (finding a credible threat of prosecution under a statute that had never been enforced, in part because it was enacted "only twenty years ago"). A finding of no credible threat of prosecution under a criminal statute requires a long institutional history of disuse, bordering on desuetude. *See Poe v. Ullman*, 367 U.S. 497, 501, 507, 81 S.Ct. 1752, 6 L.Ed.2d 989 (1961) (denying standing based on an eighty-year-old "tacit agreement" by the state not to prosecute). *Mangual v. Rotger-Sabat*, 317 F.3d 45, 56 (1st Cir., 2003)

M.C.A. 45-8-212 has been invoked as recently as 2015 when prosecutors in Flathead County, Montana charged an individual with criminal defamation. (See Statement of Stipulated Facts ¶ 1) The statute is neither desuetude nor unused. Montana has not disavowed prosecution under M.C.A. 45-8-212. M.C.A. 45-8-212 was amended in 2003.

Both the injury based on threat of prosecution and the injury based on self-censorship depend on "the existence of a credible threat that the challenged law will be enforced." *N.H. Right to Life*, 99 F.3d 8, at 14. Put another way, the fear of prosecution must be "objectively reasonable." *R.I. Ass'n of Realtors*, 199 F.3d at 31; *see also N.H. Right to Life*, 99 F.3d at 14.

The Plaintiff has engaged in substantial self-censorship in response to M.C.A. 45-8-212 following notice of a filing of a complaint under the statute

against the Plaintiff wherein the Plaintiff is being investigate for violating the statute. The Plaintiff in his advertising relying on the sworn and personally narrated statements of others who have allegations against Judge Langton. The plain language of the statute makes a party liable merely for making a communication that is defamatory without regard to the truth of the statement. Further, the accused under Montana law must prove the truth of the communication. This is particularly difficult when the Plaintiff is relying upon the statements of others. It subjects the truth of the statements made by Mr. Walker, Mr. Farmer, and Ms. Pruett to a jury which would decide between the credibility of a sitting judge and those who have accused him or others in association with the judge. This would be done at a trial administered by another judge who is likely an associate of the judge who is being accused.

There is a natural predisposition on the part of a jury to want to believe the judge because having to accept that a judge has engaged in such behavior can shake the very belief of a citizen that an administrator of justice and a system they rely upon is corrupt and that the system itself has been corrupted. By placing the burden on the Plaintiff to prove the truth of the statements of others rather than on the State to show it is false is exceedingly difficult and is unconstitutional. Further, those who prosecute and investigate would likely be disposed to prosecute because of the association between judges and prosecutors and sheriff offices.

This is a very realistic appraisal of the relationships between prosecutors, judges, and police investigators. It is also a very realistic appraisal of a juror in having to decide the credibility of those accusing the judge and the judge himself.

The State has argued that the prosecution would have to prove actual malice but that claim strikes at the plain wording of the statute and the state nor this court can place a limit if the statute is not readily susceptible to such a construction. The word malice does not appear in any form, nor does the would false appear in the mens rea of the crime. Although a court must consider the limiting construction of a statute it is not required to insert a missing term into the statute or adopt and interpretation precluded by the plain language of the statute. See *Foti v. City of Menlo Park,* 146 F.3d 629, 639 (9th Cir.1998). *See Reno v. ACLU,* 521 U.S. 844, 884, 117 S.Ct. 2329, 138 L.Ed.2d 874 (1997) ("In considering a facial challenge, this Court may impose a limiting construction on a statute only if it is 'readily susceptible' to such a construction." (quoting *Virginia v. Am. Booksellers Ass'n,* 484 U.S. 383, 397, 108 S.Ct. 636, 98 L.Ed.2d 782 (1988))); *Bd. of Airport Comm'rs v. Jews for Jesus, Inc.,* 482 U.S. 569, 575, 107 S.Ct. 2568, 96 L.Ed.2d 500 (1987) (refusing to adopt limiting construction where "the words of the resolution simply leave no room for a narrowing construction").

Montana's supposed requirement that there will be no prosecution without the prosecution proving actual malice on the part of the Plaintiff finds absolutely

no support in the statutory text. A court cannot presume that the state will act in good faith and adhere to such a requirement that is absent from the face of the statute. See *City of Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S. 750, 770, 108 S.Ct. 2138, 100 L.Ed.2d 771 (1988); *see also Stevens*, 130 S.Ct. at 1591 ("[T]he First Amendment protects against the Government; it does not leave us at the mercy of *noblesse oblige*. We would not uphold an unconstitutional statute merely because the Government promised to use it responsibly."). *Beach v. City of Redondo Beach*, 657 F.3d 936, 946-947 11 Cal. Daily Op. Serv. 11888, 2011 Daily Journal D.A.R. 14139 (9th Cir., 2011)

Jeff Langton is a public figure, and the First Amendment requires that the state proves that the Plaintiff knew the statements of Mr. Walker, Mr. Farmer, and Ms. Pruett were false with actual malice. The statute and the structure of the statute facially does not include an actual malice component and it requires that the truth be proved by the accused. M.C.A. 45-8-212 is facially unconstitutional. A facially unconstitutional statute can't be upheld merely because Montana promises to use the statute responsibly despite the plain language of the statute.

The Plaintiff's fear that the statute will be used against him considering the nature of the statute and the complainant and the factual context is rational and reasonably objective as Montana has not disavowed prosecution under the facially unconstitutional M.C.A. 45-8-212.

There is only one Montana Supreme Court case that provides any limitation on the language of M.C.A. 45-8-212 which the state legislature did amend following the decision. In *State v. Helfrich*, 922 P.2d 1159, 277 Mont. 452 (Mont., 1996), the Montana Supreme Court found that the statute at the time which found that truth was a defense as long as truth was communicated with good motives and justifiable ends was not constitutional. The court was not asked and did not address substantively the actual malice standard or the requirement of burden of proof leaving intact that the accused had to prove the justification of truth.

In challenges under the First Amendment, two types of injuries may confer Article III standing without necessitating that the challenger actually undergo a criminal prosecution. The first is when "the plaintiff has alleged an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by statute, and there exists a credible threat of prosecution." *Id.* Plaintiffs may have standing even if they have never been prosecuted or threatened with prosecution. *Doe v. Bolton,* 410 U.S. 179, 188, 93 S.Ct. 739, 35 L.Ed.2d 201 (1973). The second type of injury is when a plaintiff "is chilled from exercising her right to free expression or forgoes expression in order to avoid enforcement consequences." *N.H. Right to Life,* 99 F.3d at 13; *see Virginia v. Am. Booksellers Ass'n, Inc.,* 484 U.S. 383, 393, 108 S.Ct. 636, 98 L.Ed.2d 782 (1988); *Meese v. Keene*, 481 U.S. 465, 473, 107 S.Ct. 1862, 95 L.Ed.2d 415 (1987). Plaintiffs need

not place themselves "between the Scylla of intentionally flouting state law and the Charybdis of forgoing ... constitutionally protected activity." *Steffel v. Thompson*, 415 U.S. 452, 462, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974). A party need not violate the statute and suffer the penalty in order to generate a conflict worthy of standing in federal court. *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298, 99 S.Ct. 2301, 60 L.Ed.2d 895 (1979).

The Plaintiff has alleged a course of conduct that is arguably affected with a constitutional interest that is proscribed by statute and there exists a credible threat of prosecution. The Plaintiff has also refrained from and chilled and not exercised his right to free expression and has foregone that expression to avoid enforcement consequences. Prosecution under M.C.A. 45-8-212 is neither unused or destitute. The State has not disavowed prosecution under the statute. There is no compelling contrary evidence that the statue would not prosecute a criminal defamation complaint. The Plaintiff has engaged in substantial self-censorship to avoid any further liability under the statute. There has been an invasion of the Plaintiff's constitutional right to freedom of speech that is both actual and concrete that is casually related to a facially unconstitutional state statute. The invasion of the Plaintiff's right to free speech and the public's right to know would be redressed by a favorable ruling of this Court as there would be no proscription of the Plaintiff's or the public's rights if the statute is held to be unconstitutional. When a

statute is challenged as unconstitutional, the proper defendants are the government officials whose role it is to administer and enforce it. *See Diamond,* 476 U.S. at 57 n. 2, 106 S.Ct. 1697.

The Plaintiff need not violate the statute and suffer penalty in order to generate a conflict worthy of standing in federal court.

## IV. THE CASE IS RIPE FOR REVIEW

The doctrine of ripeness has roots in both the Article III case or controversy requirement and in prudential considerations. *See R.I. Ass'n of Realtors*, 199 F.3d at 33 (citing *Pub. Serv. Comm'n v. Wycoff Co.*, 344 U.S. 237, 242-44, 73 S.Ct. 236, 97 L.Ed. 291 (1952)). Determining ripeness requires the evaluation of "both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Abbott Labs. v. Gardner*, 387 U.S. 136, 149, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967).

The inquiry into fitness is both a constitutional and a prudential one. The constitutional inquiry, grounded in the prohibition against advisory opinions, is one of timing. *Reg'l Rail Reorganization Act Cases,* 419 U.S. 102, 140, 95 S.Ct. 335, 42 L.Ed.2d 320 (1974). "[I]ts basic rationale is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." *Abbott Labs.*, 387 U.S. at 148, 87 S.Ct. 1507. The prudential

concern is whether resolution of the dispute should be postponed in the name of "judicial restraint from unnecessary decision of constitutional issues," *Reg'l Rail Reorganization,* 419 U.S. at 138, 95 S.Ct. 335; if elements of the case are uncertain, delay may see the dissipation of the legal dispute without need for decision. By contrast, the inquiry into hardship is wholly prudential. *See generally* 1 L. Tribe, *American Constitutional Law* § 3-10 (3d ed.2000).

A dispute is ripe in the constitutional sense if it "present[s] concrete legal issues, presented in actual cases, not abstractions." *Colwell v. HHS*, 558 F.3d 1112, 1123 (9th Cir.2009) (internal quotation marks omitted).

The case is ripe as the constitutional question is fit for review. An actual harm has occurred. The Plaintiff through a reasonable and objective fear of prosecution under a facially unconstitutional statute that is neither desuetude nor unused to which has the state has not disavowed enforcement, has substantially chilled his own speech. There are concrete legal issues presented in an actual factual case involving First Amendment Rights. This is not an abstraction or a case of a distant speculative harm. The harm is current and ongoing, and can be redressed through a decision of this court to strike down the facially unconstitutional statute.

In *Mangual v. Rotger-Sabat*, 317 F.3d 45, (1st Cir., 2003) the First Circuit overturned a district court on an argument substantially like the one presented by the state that it is uncertain whether the Plaintiff will be prosecuted. The Court held a newspaper reporter had averred an intention to continue his work as an investigative journalist and that recent prosecutions under the Puerto Rico criminal libel law indicated a real threat of prosecution for his work. The newspaper reporter did not have to describe a plan to break the law or wait for prosecution under the law. It found that the chilling effect of the law is not likely to come to pass but has already come to pass. The court found the case was ripe for review. *Mangual*, Id., 60.

The case is substantially like the Plaintiff's case. The primary argument advanced by the state is that the Plaintiff may never be prosecuted. The factual elements are nearly identical. The Plaintiff here has engaged in significant chilling of his own speech to prevent prosecution under a clearly unconstitutional criminal defamation statute. The Plaintiff need not face actual prosecution to have a reasonable and objective fear warranting a case worthy of standing. The hardship on the Plaintiff is immense imposing a complete restriction on the Plaintiff's right to free speech and limiting his access to the judicial system.

## V. ABSTENTION IS INAPPROPRIATE AND IMPERMISSIBLE

Abstention is not appropriate as there is nothing ambiguous about the text of M.C.A. 45-8-212. *Examining Bd. v. Flores de Otero*, 426 U.S. 572, 598, 96 S.Ct. 2264, 49 L.Ed.2d 65 (1976). *See Wisconsin v. Constantineau*, 400 U.S. 433, 438, 91 S.Ct. 507

## VI. CONCLUSION

The Plaintiff has demonstrated standing and ripeness and that abstention is both inappropriate and impermissible. The Defendant's motion should be denied.

DATED: August 17, 2017

Respectfully submitted,

/s/ ROBERT C. MYERS

Robert C. Myers Pro Se

## CERTIFICATE OF SERVICE

I hereby certify that on this date I electronically filed the foregoing document with the clerk of the court for the United States District Court for the District of Montana, using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system

/s/ ROBERT C. MYERS

Robert C. Myers Pro Se

**CERTIFICATE OF COMPLIANCE PURSUANT TO L. R. 7.1(d)(2)(E)**

I hereby certify that this document, excluding caption, and certificate of compliance, footnotes, contains 5628 words, as determined by the word count of the word processing software used to prepare this document, specifically Microsoft Word 2007.

DATED: August 17, 2017

Respectfully submitted,

/s/ Robert C. Myers

Robert C. Myers

Pro Se