

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

|  |  |
|---|---|
| ROBERT MYERS,<br><br>　　　　　　Plaintiff,<br><br>vs.<br><br>WILLIAM E. FULBRIGHT, in his official capacity as the County Attorney for Ravalli County; TIMOTHY C. FOX, in his official capacity as Attorney General for the State of Montana,<br><br>　　　　　　Defendants. | CV 17-59-M-DWM-JCL<br><br>FINDINGS &<br>RECOMMENDATION |

　　　Attorney Robert Myers brings this action for declaratory and injunctive relief seeking a determination that Montana's criminal defamation statute, Montana Code Annotated § 45-8-212, is unconstitutional on its face and as applied under the First Amendment to the United States Constitution. Defendants William Fulbright and Timothy Fox ("the State") have moved under Federal Rule of Civil Procedure 12(b)(1) to dismiss for lack of subject matter jurisdiction based on lack of standing. For the reasons set forth below, the State's motion to dismiss should be denied.

**I.　Background**

　　　In 2016, Myers ran unsuccessfully against Judge Jeffrey Langton for the

position of district judge for the Montana Twenty-First Judicial District Court, Ravalli County. During his campaign, Myers claimed that Judge Langton was unfit for office and ran several advertisements accusing him of abusing his power as a judge. The advertisements accused Judge Langton of, among other things, purchasing and using illegal drugs, and drinking alcohol with minors.

Approximately one month after Myers announced his candidacy, the Montana Office of Disciplinary Counsel ("ODC") filed the first of three complaints against Myers. The first complaint, filed in April 2016, alleged professional misconduct based on Myers' conduct a few years earlier during a domestic relations case presided over by Judge Langton. (Doc. 1-2). The second complaint, filed in July 2016, accused Myers of engaging in professional misconduct during the campaign by making false statements about Judge Langton in a radio advertisement. (Doc. 1-5). The third complaint, filed in January 2017, similarly accused Myers of engaging in professional misconduct by making false statements about Judge Langton in a number of other campaign advertisements. (Doc. 1-9).

Myers began preparing his defense to the ODC complaints, and attempting to locate and interview witnesses to corroborate his campaign statements about Judge Langton's conduct. In early May 2017, a detective from the Missoula

County Sheriff's Department informed Myers that he was investigating a criminal defamation complaint filed against him by Judge Langton based on the statements in Myers' campaign advertisements. The detective identified three individuals he was seeking to interview as part of the investigation. Myers explained that he had been "very careful" while preparing his campaign advertisements, and had obtained affidavits from each of those individuals to support his statements about Judge Langton. (Doc. 32, at 14).

Just a few days later, on May 4, 2017, Myers commenced this action challenging the constitutionality of Montana's criminal defamation statute, Mont. Code Ann. § 45-8-212, on First Amendment grounds. (Doc. 1). That statute provides:

> (1) Defamatory matter is anything that exposes a person or a group, class, or association to hatred, contempt, ridicule, degradation, or disgrace in society or injury to the person's or its business or occupation.
>
> (2) Whoever, with knowledge of its defamatory character, orally, in writing, or by any other means, including by electronic communication, as defined in 45-8-213, communicates any defamatory matter to a third person without the consent of the person defamed commits the offense of criminal defamation and may be sentenced to imprisonment for not more than 6 months in the county jail or a fine of not more than $500, or both.
>
> (3) Violation of subsection (2) is justified if:
>     (a) the defamatory matter is true;
>     (b) the communication is absolutely privileged;
>     (c) the communication consists of fair comment made in good faith with respect to persons participating in matters of public concern;
>     (d) the communication consists of a fair and true report or a fair summary of any judicial, legislative, or other public or official

>proceedings; or
>(e) the communication is between persons each having an interest or duty with respect to the subject matter of the communication and is made with the purpose to further the interest or duty.

(4) A person may not be convicted on the basis of an oral communication of defamatory matter except upon the testimony of at least two other persons that they heard and understood the oral statement as defamatory or upon a plea of guilty or nolo contendere.

Mont. Code Ann. § 45-8-212.

Myers alleged two claims in his original complaint: (1) that Montana's defamation statute is unconstitutional on its face because it does not have an actual malice requirement, does not require the state to show falsity for a communication to be chargeable, and impermissibly shifts the burden of proof to the defendant by making truth an affirmative defense; and (2) that the statute is unconstitutional as applied to Myers because it inhibited, and continues to inhibit, him from repeating his statements about Judge Langton even if they were supported and prevented him from preparing his defense to the ODC complaints.

Myers also moved for a preliminary injunction to enjoin the State from enforcing the statute. PresidingUnited States District Court Judge Donald W. Molloy denied the motion because Myers had not shown a likelihood of irreparable harm. In particular, Judge Molloy noted that no criminal charges had been filed against Myers and the criminal investigation had not moved beyond the investigatory stage. Judge Molloy pointed out that even if Myers were to be

4

charged, the conduct being investigated had all taken place in the past during the campaign, and Myers had not presented any evidence that the State had used the threat of criminal charges to prevent him from speaking out about Judge Langton in the present or somehow chilled the speech of others. (Doc. 17, at 6).

On June 1, 2017, the State filed the pending motion to dismiss for lack of subject matter jurisdiction. The State argues that Myers does not have standing to challenge Montana's criminal defamation statute because he has not suffered a constitutionally recognized injury in fact, either in the form of a threat of prosecution or self-censorship to avoid enforcement. Before responding to the State's motion, Myers sought and obtained leave of Court to file an Amended Complaint. The Amended Complaint alleges the same two claims – that Montana's criminal defamation statute is unconstitutional on its face and as applied – but provides additional facts to establish that Myers has suffered a constitutionally recognized injury. According to Myers, the allegations in the Amended Complaint are sufficient to show that he has a concrete plan to continue violating the statute by speaking out against Judge Langton but the threat of enforcement has caused him to self-censor his own speech, such that he has suffered a constitutionally recognized injury for purposes of establishing pre-enforcement standing.

Briefing on the motion to dismiss is now complete, and the State has filed a

Notice of Termination of Criminal Investigation stating that the Montana Attorney General's office has decided not to prosecute Myers under Mont. Code Ann. § 45-8-212 for the statements he made about Judge Langton in the 2016 general election. (Doc. 35).

## II. Legal Standard

A motion to dismiss under Rule 12(b)(1) challenges the court's subject matter jurisdiction over the claims asserted. "Once challenged, the party asserting subject matter jurisdiction has the burden of proving its existence." *Rattlesnake Coalition v. United States Environmental Protection Agency*, 509 F.3d 1095, 1102 n. 1 (9th Cir. 2007).

A defendant may pursue a Rule 12(b)(1) motion to dismiss for lack of jurisdiction either as a facial challenge to the allegations of a pleading, or as a substantive challenge to the facts underlying the allegations. *Savage v. Glendale Union High School, Dist. No. 205, Maricopa County*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003). A facial challenge to the jurisdictional allegations is one which contends that the allegations "are insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). The success of a facial challenge to jurisdiction depends on the allegations in the complaint, and does not involve the resolution of a factual dispute. *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004). In a facial challenge the court must

assume the allegations in the complaint are true and it must "draw all reasonable inferences in [plaintiff's] favor." *Wolfe*, 392 F.3d at 362.

"By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Safe Air for Everyone*, 373 F.3d at 1039. In resolving such a factual attack, the court "may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment." *Safe Air for Everyone*, 373 F.3d at 1039.

If the moving party has "converted the motion to dismiss into a factual motion by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." *Safe Air for Everyone*, 373 F.3d at 1039 (*quoting Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n. 2 (9th Cir. 2003)). In looking to matters outside the pleadings, the Court must "resolve all disputes of fact in favor of the non-movant...similar to the summary judgment standard." *Dreier v. United States*, 106 F.3d 844, 847 (9th Cir. 1996). As with a motion for summary judgment, the party moving to dismiss for lack of subject matter jurisdiction "should prevail only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Casumpang v. Int'l Longshoremen's &*

*Warehousemen's Union*, 269 F.3d 1042, 1060-61 (9th Cir. 2001).

For the most part, the State's motion to dismiss for lack of standing constitutes a facial challenge to the subject matter jurisdiction of this Court. To the extent the State raises a factual challenge, the Court properly looks outside the pleading to the other materials of record for purposes of determining whether Myers has established standing.

### III. Discussion

Article III of the United States Constitution "limits the jurisdiction of federal courts to 'cases' and 'controversies.'" *San Diego County Gun Rights Committee v. Reno*, 98 F.3d 1121, 1126 (9th Cir. 1996). Article III's case or controversy requirement encompasses the related doctrines of standing and ripeness, both of which "pertain to federal courts' subject matter jurisdiction" and are properly raised in a Rule 12(b)(1) motion to dismiss. *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1121 (9th Cir. 2010). The State argues the Amended Complaint must be dismissed for lack of subject matter jurisdiction because Myers lacks standing and his claims are not ripe.

#### A. As Applied Challenge

To establish standing to bring an as applied challenge, Myers has the burden of showing: (1) that he suffered an injury in fact; (2) that there was a causal connection between the injury and the complained-of conduct; and (3) that a

8

favorable decision will likely redress his injury. *Alaska Right to Life Political Action Committee v. Feldman*, 504 F.3d 840, 848 (9th Cir. 2007) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). The State maintains that Myers cannot make it over the threshold hurdle of establishing that he has suffered an injury in fact for purposes of satisfying the first element of Article III standing.

An injury in fact requires an "invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Chandler v. State Farm Mut. Auto. Ins.*, 598 F.3d 1115, 1122 (9th Cir. 2010). Myers' claims for injunctive and declaratory relief are, in substance, a pre-enforcement challenge to Montana's criminal defamation statute. As a general rule, a plaintiff raising a pre-enforcement challenge to a criminal statute must show a "genuine threat of imminent prosecution" to satisfy the injury requirement for standing. *San Diego Cty. Gun Rights Comm. v. Reno*, 98 F.3d 1121, 1126 (9th Cir. 1996). The "mere possibility of criminal sanctions" is not enough. *San Diego Cty. Gun Rights Comm.*, 98 F.3d at 1126.

In the First Amendment context, however, the standing requirements for pre-enforcement challenges are relaxed and the "inquiry tilts dramatically toward a finding of standing." *Arizona Right to Life Pol. Action Comm. v. Bayless*, 320 F.3d 1002, 1006 (9th Cir. 2003). See also *Lopez v. Candaele*, 630 F.3d 775, 785 (9th Cir. 2010). "In an effort to avoid the chilling effect of sweeping restrictions,

9

the Supreme Court has endorsed what might be called a 'hold your tongue and challenge now' approach rather than requiring litigants to speak first and take their chances with the consequences." *Arizona Right to Life*, 320 F.3d at 1006.

Under this relaxed standard, "a chilling of the exercise of First Amendment rights is, itself, a constitutionally sufficient injury." *Arizona Right to Life*, 320 F.3d at 1006. "Where a plaintiff has refrained from engaging in expressive activity for fear of prosecution under the challenged statute, such self-censorship is a constitutionally sufficient injury as long as it is based on an actual and well-founded fear that the challenged statute will be enforced." *Human Life of Washington, Inc. v. Brumsickle*, 624 F.3d 990, 1001 (9th Cir. 2010). The plaintiff must do more than simply allege a "subjective chill," *Lopez*, 630 F.3d at 787, or "the mere existence of a proscriptive statute." *Libertarian Party*, 709 F.3d at 871. Thus, a pre-enforcement plaintiff bringing a First Amendment challenge must sufficiently allege "a credible threat of adverse state action sufficient to establish standing." *Lopez*, 630 F.3d at 786.

In his original complaint, Myers alleged injury primarily because of the criminal investigation into his campaign conduct and resulting threat of prosecution under Montana's defamation statute. (Doc. 1, at 12). Myers further claimed the investigation and "impending filing of criminal charges" were preventing him from preparing his defense to the ODC's disciplinary proceedings

and the witnesses he needed to corroborate his statements about Judge Langton would be reluctant to testify out of fear they too would be prosecuted for criminal defamation. (Doc. 1, at 3, 12-13). The Amended Complaint similarly alleges that the criminal investigation and associated threat of prosecution have prevented Myers from preparing his defense to the ODC charges. (Doc. 32, at 18-19).

As Judge Molloy pointed out in finding that Myers had suffered no harm that would justify a preliminary injunction, however, the criminal investigation related to Myers' past conduct during the 2016 campaign. Judge Molloy found that Myers failed to show the State had used the threat of criminal charges to stop him from speaking in the present or chilling the speech of others. In any event, the State has since terminated its criminal investigation and decided that it will not be prosecuting Myers under Mont. Code Ann. § 45-8-212 for the statements he made about Judge Langton in the 2016 general election. (Doc. 35). Thus, to the extent the Amended Complaint alleges an injury-in-fact based on the criminal investigation into Myers' campaign conduct and associated threat of prosecution, those allegations are moot and cannot form the basis for an injury-in-fact.

Presumably because Judge Molloy's order denying preliminary injunctive relief made clear that Myers would not be able to establish an injury in fact based on past speech, Myers filed an Amended Complaint to allege an injury-in-fact in the form of self-censorship. Myers claims he has refrained from continuing to

make statements about Judge Langton out of fear that the State will enforce the criminal defamation statute against him.

A pre-enforcement plaintiff "may meet constitutional standing requirements by 'demonstrating a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement.'" *Lopez*, 630 F.3d at 785 (quoting *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979)). "To show such a 'realistic danger,' a plaintiff must 'allege an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and ...a credible threat of prosecution thereunder.'" *Lopez*, 630 F.3d at 785 (quoting *Babbitt*, 442 U.S. at 298).

To determine whether a plaintiff has adequately alleged a credible threat of adverse state action, courts consider the following factors: (1) whether the plaintiff has shown "a reasonable likelihood that the government will enforce the challenged law" against him; (2) whether the plaintiff has established "with some degree of concrete detail" that he intends to violate the challenged law; and (3) "whether the challenged law is inapplicable to the plaintiff[], either by its terms or as interpreted by the government." *Lopez*, 630 F.3d at 787.

With regard to the first factor, courts consider whether "prosecuting authorities have communicated a specific warning or threat to initiate proceedings," and whether there is a "history of past prosecution or enforcement under the

challenged statute." *Lopez*, 630 F.3d at 787. See also *Libertarian Party of L.A. County v. Bowen*, 709 F.3d 867, 870 (9th Cir. 2013). Myers sufficiently alleges that the State has communicated a threat of enforcement as evidenced by the fact that it previously initiated a criminal investigation into Myers' statements about Judge Langton. Myers' fear that it might do so again should he repeat those statements and this time decide to prosecute him is more than imaginary or speculative. Myers cites one Montana district court order from September 2015 dismissing a criminal defamation count based in part on the lack of an explicit actual malice standard in the statute, but otherwise presents no evidence of history of past enforcement . (Doc. 12-1). Although there is little evidence in the record of a history of past enforcement, this alone is not dispositive. *Libertarian Party*, 709 F.3d at 872. The Court finds that Myers has sufficiently alleged facts showing that the State has communicated a threat of enforcement.

To satisfy the second factor, a plaintiff must allege "a concrete intent to violate the challenged law" by providing details about "future speech such as 'when, to whom, where, or under what circumstances'" the speech will take place. *Lopez*, 630 F.3d at 787 (quoting *Thomas v. Anchorage Equal Rights Comm'n.*, 220 F.3d 1134, 1139 (9th Cir. 2000)). The plaintiff's allegations must be specific enough so that the court need not speculate as to the contents of the proposed statements or the circumstances of their publication. *Lopez,* 630 F.3d at 786.

13

Myers alleges that the "real and reasonable fear of prosecution" under Mont. Code Ann. § 45-8-212 is preventing him from speaking "by publication of his own reports of corruption in Ravalli County government and the dangerous threat to children that is posed by Jeff Langton." (Doc. 32, at 15-16). Myers claims he "fully intends to publish these reports through mainstream and alternative media such as a blog and a website he will be developing but is precluded from actuating through fear of violating Montana's criminal defamation statute." (Doc. 32, at 16). Myers' allegations that he fully intends to develop a website and blog for purposes of publishing statements about Judge Langton and government corruption is sufficient to establish that he has "concrete plan" to violate the statute.

Under the third factor, a plaintiff's claim "of future harm lack[s] credibility when the challenged speech restriction by its terms is not applicable to the plaintiff[], or the enforcing authority has disavowed the applicability of the challenged law to the plaintiff[]." *Lopez*, 630 F.3d at 788. In other words, a plaintiff cannot establish a credible threat of enforcement if the challenged statute does not even arguably apply to the plaintiff's intended speech, or the "enforcing authority has expressly interpreted the challenged law as not applying to the plaintiff's activities." *Lopez*, 630 F.3d at 788.

Here, Myers' intended speech arguably falls within reach of Montana's defamation statute. Subsection (1) of the statute defines defamatory matter, and

subsection (2) provides that "[w]hoever, with knowledge of its defamatory character, ... communicates any defamatory matter to a third person without the consent of the person defamed commits the offense of criminal defamation..." Mont. Code Ann. § 45-8-212(1) & (2). Subsection (3) then states that communication of defamatory matter is justified if "the defamatory matter is true." Mont. Code Ann. § 45-8-212(3). Because Myers alleges his defamatory statements about Judge Langton are true, the State argues the statute does not prohibit Myers' intended speech. But as Myers reads the statute, it impermissibly shifts the burden of proof to the defendant by making truth an affirmative defense. Under Myers' interpretation, the State would not be required to prove the falsity of the defamatory statement. Rather, to obtain a conviction the State would only have to prove the defendant made a defamatory statement, knew of the statement's defamatory character, and communicated the statement to a third person without the consent of the person defamed. To avoid conviction, it would fall upon the defendant to establish truth. See *City of Missoula v. Paffhausen*, 289 P.3d 141, 148 (Mont. 2012) (a defendant in a criminal case who raises an affirmative defense "has the burden of producing sufficient evidence on the issue to raise a reasonable doubt of his guilt.") If Myers is correct, the criminal defamation statute would arguably apply to Myers' intended speech about Judge Langton.

The State offers a different statutory interpretation, however. It maintains

15

the statute simply identifies truth as an exception to criminal defamation, thereby making clear that true statements are not punishable as criminal defamation. Which party is correct, and whether Myers can ultimately prevail on the merits, is not relevant at this juncture in the litigation. For purposes of determining standing, it is enough that Myers has proposed an interpretation of the statute that would arguably apply to his intended future speech.

The State also argues Myers cannot establish a credible threat of enforcement because it "has expressly interpreted the challenged law as not applying to the plaintiff's activities." *Lopez*, 630 F.3d at 788. The basis of Myers' First Amendment challenge to the defamation statute is that it does not have an actual malice requirement, does not require the state to show falsity for a communication to be chargeable, and impermissibly shifts the burden of proof to the defendant by making truth an affirmative defense. The State makes clear in briefing the motion to dismiss its "position is that the criminal defamation statute must be read as requiring actual malice based on existing constitutional law and the Montana Supreme Court's statutory construction principles." (Doc. 34, at 12). Because it agrees "Myers cannot be charged and convicted of criminal defamation for defamatory matter concerning a public official unless the State alleges and proves that he communicated the matter with actual malice," (doc. 12 at 34, at 13), the State argues it has expressly interpreted the statute as not applying to Myers'

intended speech.

But the fact that the State takes this as its litigation position is not enough to show that it has disavowed any interpretation of the criminal defamation statute that would make it applicable to Myers intended future speech. See *Lopez*, 630 F.3d at 787 (explaining that "the government's disavowal must be more than a mere litigation position"). The State has not expressly disavowed its intent to enforce the defamation statute with respect to Myers' intended speech. The Notice of Termination of Criminal Investigation filed by the State makes clear that the Montana Attorney General's office has decided not to prosecute Myers for the statements he made about Judge Langton during the 2016 general election. (Doc. 35). Notably, however, the Notice says nothing about disavowing future enforcement of the statute should Myers engage in such speech in the future. Because Myers has proposed an interpretation of the statute that would arguably apply to his intended and the State has not disavowed the applicability of the challenged law to Myers' intended speech, the third factor also weighs in favor of finding that Myers has standing.

Having considered the relevant factors, the Court finds that Myers has sufficiently alleged a credible threat of adverse state action sufficient to establish an injury-in-fact for purposes of standing to pursue his as-applied challenge.

    **B.**    **Facial Challenge**

A statute may be facially unconstitutional if "it is unconstitutional in every conceivable application, or...seeks to prohibit such a broad range of protected conduct that it is unconstitutionally 'overbroad.'" *Members of the City Council of the City of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 796, 104 (1984). Myers brings the second type of challenge. He alleges Montana's criminal defamation statute is unconstitutionally overbroad because it does not have an actual malice requirement and does not require the state to show falsity for a communication to be chargeable.

In First Amendment cases like this one, the overbreadth doctrine allows a plaintiff to facially challenge a statute on the ground that it may be unconstitutional as applied to others not before the court. See *Get Outdoors II, LLC v. City of San Diego*, 506 F.3d 886 (9th Cir. 2007). But "the overbreadth doctrine does not affect the rigid constitutional requirement that plaintiffs must demonstrate an injury in fact to invoke a federal court's jurisdiction." *Dream Palace v. County of Maricopa*, 384 F.3d 990, 999 (9th Cir. 2004). The court must still "ask whether the plaintiff has suffered an injury in fact and can satisfactorily frame the issue on behalf of these non-parties." *Get Outdoors*, 506 F.3d at 891. "Without this bare minimum of standing, the overbreadth exception would nullify the notion of standing generally in First Amendment litigation." *Get Outdoors*, 506 F.3d at 891. The Ninth Circuit has thus held that the traditional elements of standing "still apply in

the overbreadth context." *Get Outdoors*, 506 F.3d at 891. As discussed above, Myers has sufficiently alleged an injury in fact for purposes of establishing Article III standing.

## IV. Conclusion

For the reasons set forth above,

IT IS RECOMMENDED that the Defendants' Motion to Dismiss be DENIED.

DATED this 30th day of January, 2018

Jeremiah C. Lynch
United States Magistrate Judge