IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| ROBERT MYERS,<br><br>               Plaintiff,<br><br>vs.<br><br>WILLIAM E. FULBRIGHT, in his official capacity as the County Attorney for Ravalli County; TIMOTHY C. FOX, in his official capacity as Attorney General for the State of Montana.<br><br>               Defendants. | CV 17-59-M-DWM-JCL<br><br>FINDINGS & RECOMMENDATION |

      Pro se Plaintiff Robert Myers brings this action for declaratory and injunctive relief seeking a determination that Montana's criminal defamation statute, Montana Code Annotated § 45-8-212, is unconstitutional on its face and as applied under the First Amendment to the United States Constitution. Defendants William Fulbright and Timothy Fox ("the State") have moved for summary judgment on all claims. For the reasons set forth below, the State's motion should be granted and this case should be dismissed.

1

I.   **Background**[1]

In 2016, Myers ran unsuccessfully against Judge Jeffrey Langton for the position of district judge for the Montana Twenty-First Judicial District Court, Ravalli County. During his campaign, Myers claimed that Judge Langton was unfit for office and ran several advertisements accusing him of abusing his power as a judge. The advertisements accused Judge Langton of, among other things, purchasing and using illegal drugs, and drinking alcohol with minors.

Based on those advertisements, the Montana Office of Disciplinary Counsel ("ODC") filed two professional misconduct complaints against Myers, accusing him of making false statements about Judge Langton during the campaign. Following a hearing in July 2017, the Montana Commission on Practice found that Myers had violated the Montana Rules of Professional Conduct and the Montana Code of Judicial Conduct. The Montana Supreme Court adopted the Commission's

---

[1] Myers has not filed a statement of genuine issues in response to the State's motion. Therefore, the following background facts are taken primarily from the joint statement of stipulated facts, the State's statement of undisputed facts, and other evidentiary materials of record, including exhibits to the original Complaint. (Docs. 26, 54, and 1-1 through 1-10). In addition, the State asks the Court to disregard Myers' summary judgment response brief, which was filed after the initial and extended briefing deadlines had passed. In the interests of justice, however, the Court will nevertheless consider Myers' untimely filing.

findings, and disbarred Myers from the practice of law in Montana. *In the Matter of Robert C. Myers*, Mont. Sup. Ct., PR 17-0026 (Dec. 28, 2017).

In the meantime, in May 2017 while the ODC disciplinary complaints were still pending, Myers learned that the Missoula County Sheriff's Department was investigating a criminal defamation complaint filed against him by Judge Langton based on the statements in his campaign advertisements. Shortly after learning of the investigation, Myers commenced this action bringing both facial and as-applied First Amendment claims challenging the constitutionality of Montana's criminal defamation statute. This Court has previously held that Myers has Article III standing to proceed with both claims. The State moves for summary judgment on the ground that Montana's criminal defamation statute is constitutional both on its face and as applied to Myers.

## II. <u>Summary Judgment Standards</u>

Under Federal Rule of Civil Procedure 56(a), a party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The party seeking summary judgment bears the initial burden of informing the Court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it

believes demonstrate the absence of any genuine issue of material fact. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323 (1986). A movant may satisfy this burden where the documentary evidence produced by the parties permits only one conclusion. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 251 (1986).

Once the moving party has satisfied its initial burden with a properly supported motion, summary judgment is appropriate unless the non-moving party designates by affidavits, depositions, answers to interrogatories or admissions on file "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. 317, 324 (1986). The party opposing a motion for summary judgment "may not rest upon the mere allegations or denials" of the pleadings. *Anderson*, 477 U.S. at 248.

In considering a motion for summary judgment, the court "may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 130, 150 (2000); *Anderson*, 477 U.S. at 249-50. The Court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in the non-moving party's favor. *Anderson*, 477 U.S. at 255; *Betz v. Trainer Wortham & Co., Inc.*, 504 F.3d 1017, 1020-21 (9th Cir. 2007).

## III. Discussion

Montana's criminal defamation statute, Mont. Code Ann. § 45-8-212, provides as follows:

> (1) Defamatory matter is anything that exposes a person or a group, class, or association to hatred, contempt, ridicule, degradation, or disgrace in society or injury to the person's or its business or occupation.
>
> (2) Whoever, with knowledge of its defamatory character, orally, in writing, or by any other means, including by electronic communication, as defined in 45-8-213, communicates any defamatory matter to a third person without the consent of the person defamed commits the offense of criminal defamation and may be sentenced to imprisonment for not more than 6 months in the county jail or a fine of not more than $500, or both.
>
> (3) Violation of subsection (2) is justified if:
>   (a) the defamatory matter is true;
>   (b) the communication is absolutely privileged;
>   (c) the communication consists of fair comment made in good faith with respect to persons participating in matters of public concern;
>   (d) the communication consists of a fair and true report or a fair summary of any judicial, legislative, or other public or official proceedings; or
>   (e) the communication is between persons each having an interest or duty with respect to the subject matter of the communication and is made with the purpose to further the interest or duty.
>
> (4) A person may not be convicted on the basis of an oral communication of defamatory matter except upon the testimony of at least two other persons that they heard and understood the oral statement as defamatory or upon a plea of guilty or nolo contendere.

Myers claims this statute is unconstitutionally overbroad and vague because it does not have an actual malice requirement, does not require the State to

show falsity for a communication to be chargeable, and impermissibly shifts the burden of proof to the defendant by making truth an affirmative defense.[2]

Myers also raises an as-applied challenge, in which he claims the statute is unconstitutional as applied to him because he is inhibited from continuing to speak out against Judge Langton, even if his statements are true and made without actual malice. Because Myer's facial and as-applied challenges raise essentially the same issues – whether Montana's criminal defamation statute is unconstitutional because it does not require proof of falsity and actual malice – they are addressed together below.

### A. Statutory Construction Standards

When faced with a constitutional challenge to a state statute, the federal courts apply the state's rules of statutory construction. *Association des Eleveurs de Canards et d'Oies du Quebeck v. Harris*, 729 F.3d 937, 945 (9th Cir. 2013); *Yamaha Motor Corp., USA v. Team Bozeman Motorsports*, 2009 WL 10678151 *5 (D. Mont. July 29, 2009).

---

[2] In his summary judgment response brief, Myers claims for the first time that the criminal defamation statute is unconstitutional because its definition of "defamatory matter" is vague. Because Myers has not pled this theory in the Amended Complaint or otherwise raised it previously in the case, the Court declines to consider it. See *Patel v. City of Long Beach*, 564 Fed. Appx. 881, 882 (9th Cir. 2014) ("a plaintiff cannot raise a new theory for the first time in opposition to summary judgment").

Under Montana law, "[s]tatutes are presumed to be constitutional and it is the duty of the Court to avoid an unconstitutional interpretation if possible." *Montanans for Responsible Use of School Trust v. State ex rel. Bd. Of Land Com'rs*, 989 P.2d 800, 802 (Mont. 1999). See also *City of Great Falls v. Morris*, 134 P.3d 692, 695 (Mont. 2006) (noting that "all statutes carry with them a presumption of constitutionality" and courts must construe "statutes narrowly to avoid an unconstitutional interpretation if feasible.") A federal court's role in interpreting a state statute is to construe the law as would the state's highest court if confronted with the same issue. See *Planned Parenthood of Idaho v. Wasden*, 376 F.3d 908, 925 (9th Cir. 2003).

The Court presumes that when the Montana Legislature enacts or amends a statute it is aware of existing law, including court decisions interpreting statutes. *Swanson v. Hartford Inc.*, 46 P.3d 584 (Mont. 2002). "The party challenging the constitutionality of a statute bears the burden of proving beyond a reasonable doubt that the statute is unconstitutional." *Wilkes v. Montana State Fund*, 177 P.3d 483, 485 (Mont. 2008). This requirement applies even in First Amendment cases. See *Montana v. Lilburn*, 875 P.2d 1036, 1039 (Mont. 1994).

Montana's principles of statutory construction are consistent with the federal standards, pursuant to which statutes "will be interpreted to avoid constitutional

difficulties" where possible. *Frisby v. Schultz*, 487 U.S. 474, 483 (1988). See also *Public Citizen v. United States Dep't of Justice*, 491 U.S. 440, 466 (1989) ("It has long been an axiom of statutory interpretation that where an otherwise acceptable construction of a statute would raise serious constitutional problems, the Court will construe the statute to avoid such problems unless such construction is plainly contrary to the intent of Congress.")

### B. Proof of Falsity

Subsection (1) of the defamation statute defines defamatory matter and subsection (2) provides that "[w]hoever, with knowledge of its defamatory character…communicates any defamatory matter to a third person without the consent of the person defamed commits the offense of criminal defamation." Mont. Code Ann. § 45-8-212(1) & (2). Subsection (3) then lists five justifications to defamation, the first of which states that communication of defamatory matter is justified if "the defamatory matter is true." Mont. Code. Ann. § 45-8-212(3).

It is well established that "true communications are constitutionally protected" and are not actionable as defamation in a civil suit or criminal prosecution. *State v. Helfrich,* 922 P.2d 1159, 1163 (Mont. 1996) Thus, "truth is an absolute defense to a prosecution for criminal defamation as well as to a civil

defamation suit." *Helfrich,* 922 P.2d at 1163. See *New York Times Co. v. Sullivan*, 376 U.S. 254, 277-78 (1964); *Garrison v. Louisiana*, 379 U.S. 64, 74-75(1964).

Consistent with this well accepted principle, subsection (3) recognizes that truth is a justification that precludes criminal liability for defamation. Because of the way the statute is structured, however, Myers contends it does not require the state to prove falsity and improperly makes truth an affirmative defense that a defendant must allege and prove in order to avoid conviction. While this may be one plausible reading, the State offers an equally plausible alternative reading pursuant to which it bears the burden of proving falsity. Subsection (3) can reasonably be read as setting forth exceptions to criminal defamation, rather than affirmative defenses. Under this reading, if defamatory matter is true, it is not punishable as criminal defamation and the State would have burden of proving falsity as an element of the offense to obtain a conviction.

Where, as here, a statute is susceptible to two different constructions, one of which raises constitutional concerns and other does not, the Court must read the statute so as to avoid the constitutional problem. Applying this principle of statutory interpretation, the State's construction is the more reasonable of the two because it avoids any constitutional problems raised by relieving the State of

having to prove falsity and construing truth as an affirmative defense that must be proven by the defendant.

Furthermore, as the State points out, when the Montana Legislature intends to establish an affirmative defense to a criminal offense, it has done so expressly. See e.g. Mont. Code Ann. § 45-3-115 ("Affirmative defense. A defense of justifiable use of force…is an affirmative defense); § 45-5-710 ("Affirmative defense. A person charged with prostitution [and related offenses] …may assert an affirmative defense that the person is a victim of human trafficking."); § 80-18-11 ("Affirmative defense for possession or cultivation of marijuana). Unlike these statutes, Mont. Code Ann. § 45-8-212 says nothing about truth being an affirmative defense to criminal defamation or placing the burden of proof on the defendant. If the legislature had intended for truth to be an affirmative defense to criminal defamation, it could have explicitly designated it as such. Instead, the legislature drafted subsection (3) to effectively preclude criminal liability for true statements, thereby leaving it to the State to prove falsity to obtain a conviction.

Finally, the Court notes that construing the criminal defamation statute to require proof of falsity is consistent with the rule of lenity, which provides that when a criminal statute is subject to more than one reasonable but conflicting

interpretation, it should be construed in favor of the defendant. See e.g. *State v. Stoner*, 365 Mont. 45, 406 (Mont. 2012).

### C. Actual Malice

Myers further claims that Montana's criminal defamation statute is unconstitutionally overbroad because it does not require proof of actual malice in cases involving speech on matters of public concern.

In *New York Times Co. v. Sullivan*, 376 U.S. 254, (1964), the United States Supreme Court held that in a civil defamation action by a public official seeking damages for a false statement regarding his official conduct, the public official must prove that "the statement was made with 'actual malice' – that is, with knowledge that it was false or with reckless disregard of whether it was false or not." In *Garrison v. Louisiana*, 379 U.S. 64, 78 (1964), the Supreme Court extended its holding in *New York Times* to criminal defamation cases, and declared Louisiana's criminal libel statute unconstitutional because it did not establish truth as an absolute defense and punished false statements concerning public officials without requiring proof of actual malice.

The State agrees that Montana's criminal defamation statute does not expressly include the actual malice standard set forth in *New York Times* and *Garrison*. Citing Montana rules of statutory construction, however, the State

11

argues the Court should interpret Mont. Code Ann. § 45-8-212 as incorporating an actual malice requirement, thereby upholding its constitutionality.

First, the State relies on the principle that the Montana Legislature is presumed to be aware of existing case law when it enacts or amends a statute. See *Swanson*, 46 P.3d at 588. The Montana Legislature enacted Mont. Code Ann. § 45-8-212 in 1973, and has amended it several times since then. See Criminal Law Commission Comments, § 45-8-212. In *State v. Helfrich*, 922 P.2d 1159, 1162 (Mont. 1996), the Montana Supreme Court struck down a previous version of Mont. Code Ann. § 45-8-212 because it did not allow for truth as an absolute defense as required by *New York Times* and *Garrison*. In light of *Helfrich*, the Montana Legislature amended Mont. Code Ann. § 45-8-212 in 1997 to absolutely preclude criminal liability for true statements. See Compiler's Comments, § 45-8-212. Because *New York Times* and *Garrison* had been decided several years earlier, the Court presumes that the Montana Legislature was aware of and intended to comply with those decisions when it enacted Mont. Code Ann. § 45-8-212 in its present form.

Second, the State relies on the principle that the Montana Supreme Court presumes that statutes are constitutional and will adopt an interpretation that renders a statute constitutional, rather than one that renders it invalid. See

12

*Montanans for Responsible Use of School Trust,* 989 P.2d at 802; *Montana v. Ross*, 889 P.2d 161, 164 (Mont. 1995). Because Mont. Code Ann. § 45-8-212 does not contain any intent element on its face, it is susceptible to two different interpretations, one of which requires proof of actual malice and one which does not. If the Court were to accept Myers' interpretation and read the statute as allowing for criminal liability without proof of actual malice, the statute would be unconstitutional under *New York Times* and *Garrison*. The Court can avoid this constitutional problem, however, by interpreting the statute more narrowly as requiring actual malice in criminal defamation cases involving matters of public concern.

The Court finds the latter interpretation more persuasive for several reasons. First, it is consistent with Montana's principles of statutory construction as set forth above. Second, this interpretation is supported by the Montana Supreme Court's application of the actual malice standard in civil defamation cases. See *Roots v. Montana Human Rights Network*, 913 P.2d 638, 640 (Mont. 1996) (citing *New York Times*). Like its criminal counterpart, Montana's civil defamation statute does not expressly incorporate the actual malice standard. Mont. Code. Ann. §§ 27-1-802. The Montana Supreme Court has nevertheless applied the *New York Times* standard and held that a "public figure cannot recover damages upon a claim

13

for defamation without a showing of actual malice." *Roots*, 913 P.2d at 640. The fact that the Montana Supreme Court has applied *New York Times* in the civil defamation context suggests it would do the same in the criminal context where the rule of lenity applies, and construe Montana's criminal defamation statute as requiring proof of actual malice in light of *New York Times* and *Garrison*.

Third, this interpretation is supported by the Tenth Circuit's decision in *Phelps v. Hamilton*, 59 F.3d 1058, 1072 (10th Cir. 1995) upholding a Kansas criminal defamation statute that, like Montana's, did not contain an express "actual malice" requirement or a contradictory standard. The plaintiff in *Phelps* argued that Kansas' criminal defamation statute was facially invalid because it did not provide for an actual malice standard in cases involving matters of public concern. *Phelps,* 59 F.3d at 1070.

The Tenth Circuit rejected this argument for several reasons. First, the court applied the presumption that when the state legislature amends a statute it acts with full knowledge as to the subject matter of the statute, including judicial decisions. Because *New York Times* and *Garrison* had been decided by the time the Kansas legislature enacted the defamation statute, the court presumed the legislature was aware of those decisions and understood the parameters of criminal defamation, including the actual malice requirement. *Phelps*, 59 F.3d at 1071. Second, the court

applied the principle that a statute should be interpreted so as to uphold its constitutionality whenever possible and concluded the criminal defamation statute could reasonably be construed as only intending to criminalize unprotected speech, that is, statements on matters of public concern made with actual malice. *Phelps*, 59 F.3d at 1072. The court further found the fact that Kansas courts had applied the actual malice standard in civil defamation cases involving matters of public concern suggested "it certainly would apply that standard to criminal cases" where the rule of lenity applies. *Phelps*, 59 F.3d at 1072. Because the criminal defamation statute was sufficiently ambiguous, the Tenth Circuit interpreted the statute narrowly as requiring actual malice in criminal defamation cases involving matters of public concern, and upheld the statute as facially valid. *Phelps*, 59 F.3d at 1073.

Here, as in *Phelps*, Montana's criminal defamation statute does not expressly contain an intent requirement and is thus readily susceptible to two different interpretations – one requiring proof of actual malice and one not. Narrowly construing the statute so as to avoid an unconstitutional interpretation, the Court views Mont. Code. Ann. § 45-8-12 as requiring actual malice in criminal defamation cases involving matters of public concern, thereby rendering the statute facially valid.

The Court is aware that, since *Garrison*, several courts have held various

15

state criminal defamation and libel statutes unconstitutional for failing to limit criminal liability to statements on matters of public concern made with actual malice. But these cases are all distinguishable either because the statutes at issue contained an intent requirement that was materially different from the actual malice standard adopted in *New York Times* and *Garrison,* or because the statutes had been codified in their present form before the United States Supreme Court decided *Sullivan* and *Garrison.* See *State v. Turner*, 864 N.W.2d 204, 208 (Minn. 2015) (invalidating Minnesota's criminal defamation statute because it did not require the state to prove actual malice before imposing liability, but noting in doing so that *New York Times* and *Garrison* were decided after the Minnesota legislature codified the criminal defamation statute in its present form); *Mangual v. Rotger-Sabat*, 317 F.3d 45, 66 (1st Cir. 2003) (holding Puerto Rico's criminal libel statute unconstitutional because it contained the common law malice standard, rather than the *New York Times* actual malice standard); *Ivey v State of Alabama*, 821 So.2d 937, 944 (Alabama 2001) (holding Alabama's criminal defamation statute unconstitutional because it required that allegedly defamatory statements be made "maliciously" rather than with "actual malice"); *Parmelee v. O'Neel*, 186 P.3d 1094, 1103 (Wash. App. 2009) (holding Washington's criminal libel statute unconstitutional because it included the term "malice" rather than "actual malice);

*I.M.L v. State of Utah*, 61 P.3d 1038, 1044 (Utah 2002) (holding Utah's criminal libel statute unconstitutional because it contained common law malice standard, rather than actual malice standard contemplated by the United States Supreme Court in *New York Times* and *Garrison); Fitts v. Kolb*, 779 F.Supp. 1502, 1515-1516 (D. S.C. 1991) (holding South Carolina's criminal libel statute unconstitutional because it referenced the common law standard of "malice," which is not synonymous with the "actual malice" standard of *New York Times* and *Garrison*); *State v. Powell*, 839 P.2d 139, 145 (Ct. App. N.M. 1992) (holding New Mexico's criminal libel statute unconstitutional because it referred to "malicious" statements rather than statements made with "actual malice"); *Eberle v. Municipal Court*, 55 Cal. App.3d 423, 432-33 (Cal. App. 1976) (holding California's criminal libel statute unconstitutional because it referred to "malice" rather than "actual malice");*Weston v. State*, 528 W.W.2d 412 (Ark. 1975) (holding Arkansas criminal libel statute that contained term "malicious" unconstitutional because it did not comport with the "actual malice" standard adopted in *New York Times* and *Garrison)*.

    In most of these cases, the challenged statutes contained intent requirements that directly conflicted with the "actual malice" standard of *New York Times* and *Garrison*. Thus, these courts reasonably concluded that the statutes could not be

17

narrowly construed to include the "actual malice" standard without removing language and rewriting the statute. And presumably because the Minnesota statute at issue in *Turner* had been codified in its challenged form before *New York Times* and *Garrison,* the court could not presume that the legislature was aware of and intended for the "actual malice" standard to apply. In contrast, Montana's criminal defamation statute does not contain a contradictory intent requirement, and was enacted in its present form long after the United States Supreme Court had decided *New York Times* and *Garrison.* Thus, unlike the statutes at issue in the cases listed above, Montana's criminal defamation statute is readily susceptible to a narrowing interpretation pursuant to which the State must prove "actual malice" to obtain a conviction, thereby rendering the statute constitutional.

The Court also recognizes that in *Helfrich*, the Montana Supreme Court declared a prior version of Montana's criminal defamation statute unconstitutional because it expressly contradicted the civil standard for defamation set forth in *New York Times*. At the time *Helfrich* was decided, the criminal defamation statute provided that communication of defamatory matter "is justified if…the defamatory matter is true and is communicated with good motives and for justifiable ends." Mont. Code Ann. § 45-8-212(3)(a) (1973). The Montana Supreme Court held this provision violated the First and Fourteenth Amendments of the United States

18

Constitution as interpreted in *New York Times* because it did not allow for truth as an absolute defense. *Helfrich*, 922 P.2d at 1162. Unlike the statutory language at issue in Helfrich, which expressly contradicted the *New York Times* standard and was not readily subject to a narrowing construction, the statutory language at issue here is readily subject to a narrowing construction pursuant to which "actual malice" is required to establish criminal defamation, thereby rendering the statute constitutional.

## IV. Conclusion

For the reasons set forth above, Myers has not met his burden of demonstrating that Montana's criminal defamation statute is unconstitutional. Accordingly,

IT IS RECOMMENDED that the State's Motion for Summary Judgment be GRANTED and this matter be dismissed.

DATED this 10th day of December, 2018.

_____
Jeremiah C. Lynch
United States Magistrate Judge